669 A.2d 930

**Anthony J. PANICHELLI, Appellee,**

v.

**LIBERTY MUTUAL INSURANCE GROUP, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 20, 1995.

Decided Jan. 18, 1996.

John P. Baginski, J. Eric Barchiesi, Pittsburgh, for Liberty Mutual.

Michael E. Kennedy, Pittsburgh, for A. Panichelli.

Stephen M. Greecher, Jr., Lewistown, for amicus curiae.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION

CAPPY, Justice.

This appeal presents us with an issue of first impression: whether sick pay and social security benefits received by an insured should be deducted by an insurer in calculating the insured's "actual loss of gross income" under section 1712(2) of the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL).[1] We conclude, for the reasons which follow, that the insurer may not make such deductions in calculating the insured's actual loss of gross income. Accordingly, we affirm the decision of the Superior Court.

The facts giving rise to this appeal are that Anthony J. Panichelli (Panichelli) was injured in a motor vehicle accident on December 2, 1987. Panichelli was insured at the time under a policy, issued by Liberty Mutual Insurance Group (Liberty Mutual), which was written and issued in accordance with the provisions of the MVFRL. This policy provided for income loss benefits under the Combination First Party Benefits provision. Panichelli, who was rendered unable to work as a result of the injuries he sustained in the accident, filed a claim with Liberty Mutual for loss of income benefits. During the period from December 3, 1987 through August 1, 1988, Panichelli received sick pay benefits from his employer in an amount equal to his gross income. Liberty Mutual, taking the position that it was entitled to set-off for Panichelli's sick pay benefit received by him, did not pay any income loss benefits during this time. Liberty Mutual began making income loss benefits to Panichelli after August 1, 1988, but took a set-off in

1. The Act of February 12, 1984, P.L. 26, No. 11, 75 Pa.C.S. § 1701 *et seq.*

an amount equal to Panichelli's monthly social security disability benefit which he was then receiving.[2]

Panichelli then filed the instant action against Liberty Mutual seeking the full amount of his monthly salary less the 20% statutory deduction, for a payment amount of $2,186.80. The trial court entered summary judgment in favor of Panichelli. The Superior Court affirmed this decision, and allowance of appeal was granted by this Court.

In our review of a grant of summary judgment, we must determine whether there was an error of law or a clear or manifest abuse of discretion. *Lened Homes v. Department of Licenses and Inspections*, 386 Pa. 50, 123 A.2d 406 (1956).

After thoroughly reviewing the issue before us, we find no merit to Liberty Mutual's argument that the MVFRL must be construed to prevent what the insurer is describing as "double recovery" by the insured, i.e., recovery of sick pay or social security disability benefits, as well as first party loss of income benefits under the policy.

Section 1712(2) provides that an insurer issuing motor vehicle liability policies shall make available for purchase first party benefits with respect to injury arising out of the maintenance or use of a motor vehicle, which benefits are to include:

(2) **Income loss benefit.**—Includes the following:

(i) Eighty percent of *actual loss of gross income.*

75 Pa.C.S. § 1712(2) (emphasis added).

We agree with the lower courts that Liberty Mutual's reliance on the discussion in *Persik v. Nationwide Mutual Ins. Co.*, 382 Pa.Super. 29, 554 A.2d 930 (1989), *alloc. denied*, 522 Pa. 613, 563 A.2d 499 (1989), of actual loss of gross income under the MVFRL as requiring the loss be "real", as opposed to theoretical, is misplaced. The Superior Court's ruling in *Persik* did not address the question of what constitutes a

2. Prior to his accident, Panichelli's gross monthly income was $2,733.50. Liberty Mutual reduced this amount by a 20% deduction pursuant to § 1712(2) of the MVFRL, for a resulting amount of $2,186.80. The insurer further reduced this amount by his monthly $857.90 social security disability benefit, for a net monthly income loss benefit of $1,328.90.

double recovery of gross income. Instead, it dealt with the issue of whether an accident victim who was unemployed on the date of the accident, and thus was not earning an income at the time, has had an actual loss of gross income under § 1712(2) of the MVFRL.

The lower courts, in construing the phrase "actual loss of gross income" in § 1712(2), appropriately endeavored to give effect to all of the provisions of the MVFRL, turning for guidance to § 1719. *See Zimmerman v. O'Bannon,* 497 Pa. 551, 442 A.2d 674 (1982).

Section 1719 of the MVFRL provides:

**§ 1719. Coordination of benefits**

(a) **General rule.**—Except for worker's compensation, a policy of insurance issued or delivered pursuant to this subchapter shall be primary. Any program, group contract or other arrangement for payment of benefits such as described in section 1711 (relating to required benefits) 1712(1) and (2) (relating to availability of benefits) or section 1715 (relating to availability of adequate limits) shall be construed to contain a provision that all benefits provided therein shall be in excess of and not in duplication of any valid and collectible first party benefits provided in section 1711, 1712 or 1715 or workers' compensation.

(b) **Definition.**—As used in this section, the term "program, group contract or other arrangement" includes, but is not limited to, benefits payable by a hospital plan corporation or a professional health service corporation subject to 40 Pa.C.S. Ch. 61 (relating to hospital plan corporations) or 63 (relating to professional health services plan corporations).

The lower courts reasoned that the reference in § 1719(a) to § 1712(2) shows an intent on the part of the Legislature to allow excess recovery of wage benefits payable under any program, group contract, or other arrangement. The lower courts reasoned that sick pay and social security are "programs" which provide payment of benefits when the ability to earn income is impaired. As the trial court stated in its well-

reasoned opinion, the terms in § 1719(a), "any program" and "other arrangement" for payment of benefits, are extremely broad and easily encompass both sick leave benefits and social security benefits. Liberty Mutual urges that the examples used in § 1719(b) show the intent of the Legislature to encompass only health care benefit plans in the definition of "programs" in § 1719(a). This argument, however, fails to address the "includes, but is not limited to" language in § 1719(b). Moreover, it fails to take into consideration the reference made in § 1719(a) to § 1712(2). We agree with the lower courts that, based on the language of § 1719(a), sick pay and social security benefits programs must be construed as providing benefits in excess of, and not in duplication of, the income loss benefits payable under § 1712(2).

Panichelli's receipt of both employer provided sick leave benefits and social security disability benefits, as well as full income loss benefits, does not result in "double dipping". These are benefits for which the employee has paid in the form of lower wages for the sick leave benefits and in the form of payroll deductions for the social security benefits. Thus, in receiving his sick leave pay, Panichelli was exhausting his *earned* employee benefit. Similarly, Panichelli has paid for social security disability benefits through payroll deductions, and he is now drawing on these benefits because his accident has rendered him unable to work. Liberty Mutual would have us lose sight of the fact that Panichelli has paid for his income loss benefits through premiums he paid Liberty Mutual with his own funds. He is entitled to income loss benefits under his policy in the full amount of his income loss without any offset for sick pay or social security benefits received by him.[3]

3. Because we believe that the MVFRL allows the insured to recover benefits for which he has paid or earned through his employment, as well as income loss benefits, we cannot agree with the dissent's position that Panichelli is receiving a windfall here which is contrary to the intent of the MVFRL. The dissent's position would actually serve to reward an insured who has either exhausted or is not eligible for sick leave benefits or social security disability at the time of the accident by finding an actual loss of gross income to that person, while punishing an insured who, at the time of the accident, has accumulated sick leave or eligibility for social security disability, by finding receipt of these

As we perceive no error of law or manifest abuse of discretion in the lower courts' decisions, the Superior Court's Order affirming entry of summary judgment in favor of Panichelli is hereby affirmed.

MONTEMURO, J., who was sitting by designation, did not participate in the decision of this case.

CASTILLE, J., files a dissenting opinion in which FLAHERTY, J., joins.

CASTILLE, Justice, dissenting.

The effect of the majority opinion essentially allows a party who is injured in a motor vehicle accident to monetarily profit from their injury, and in some cases reap benefits that would in effect double his or her salary. The purpose of the Motor Vehicle Financial Responsibility Law is simply to make an injured party whole; not to bestow upon an injured party a windfall. Accordingly, I must dissent as I disagree with the Superior Court's holding and this Court's affirmance thereof.

Following appellee's motor vehicle accident in December of 1987, appellee received sick leave benefits that were equivalent to his monthly gross income for a period of approximately eight months. At the time of his accident, appellee's monthly gross income was $2,733.50. According to the majority, appellee would be entitled to receive this $2,733.50 per month *in addition to* his Income Loss Benefits pursuant 75 Pa.C.S. § 1712(2)(i) of the Motor Vehicle Financial Responsibility Law which permits the insured to receive 80% of his actual loss of gross income.[1] Thus, appellee would be entitled to receive

benefits to bear upon his eligibility for income loss benefits coverage under his insurance policy.

1. Section 1712(2)(i) states in relevant part:

  An insurer issuing or delivering liability insurance policies covering any motor vehicle of the type required to be registered under this title, ... shall make available for purchase first party benefits with respect to injury arising out of the maintenance or use of a motor vehicle as follows:

  (2) **Income loss benefit.**—Includes the following:

  (i) Eighty percent of *actual loss of gross income.*

  75 Pa.C.S. § 1712(2)(i) (emphasis added).

80% of $2,733.50 or $2,186.80 per month plus $2,733.50 per month in sick pay benefits. Appellee's total benefits for this eight month period (sick pay plus income loss benefits) would equal approximately $39,362.40. Had appellee not been injured during this same period he would have received $21,- 868.00. Thus, the Superior Court's ruling allows appellee to nearly double the monthly income he would have received had he not been injured.

At the end of the eight month period, in August of 1988, appellee's sick pay benefits terminated at which time he began to receive $857.90 in social security benefits per month as a result of his injuries. The Superior Court held that appellee would be entitled to receive this $857.90 *in addition to* $2,186.80 (80% of appellee's former monthly gross income). The sum of the social security benefits plus 80% of his monthly gross income amounts to $3,044.70 per month. Thus, under this scenario, appellee would make $311.20 per month more than he would have received were he still working ($3,044.70—monthly salary of $2,733.50 = $311.20).

I believe these results are contrary to the purpose of the Motor Vehicle Financial Responsibility Law which was enacted to curb the rising costs of automobile insurance. *See Lambert v. McClure*, 407 Pa.Super. 257, 262, 595 A.2d 629, 631 (1991); *Persik v. Nationwide Mutual Insurance Co.*, 382 Pa.Super. 29, 36, 554 A.2d 930, 934 (1989) (purpose of the MVFRL was to reduce the escalating costs of purchasing car insurance and to confront the problems caused by the high numbers of uninsured motorists). The goal of the Motor Vehicle Financial Responsibility Law should be to make the party whole in the event of an accident and should not put a party in a better position than he or she was had the accident not occurred. Profiting from car accidents fosters fraud and encourages malingering, thereby defeating the purpose of the Motor Vehicle Financial Responsibility Law. This should not be permitted.

According to the plain language of 75 Pa.C.S. § 1712(2)(i), an insured is entitled to recover only 80% of his or her *actual loss* in gross income. Here, appellee did not suffer any actual

economic loss during the first eight months of his injury because he received sick pay benefits that were equal to his gross income. Therefore, pursuant to § 1712(2)(i) appellee should be precluded from receiving any income loss benefits during the eight month period since appellee did not actually suffer a loss in his gross income.

With respect to the period following the eight month period, appellee received social security benefits as a direct result of the accident. Thus, appellee's actual loss of gross income was actually being reduced in part by his social security benefits. Therefore, Liberty Mutual should be permitted to deduct appellee's social security benefits from his monthly gross income before calculating appellee's actual loss in gross income ($2,733.50 (gross income)—$857.90 (social security benefits) × 80% = $1,500.48).[2]

Unfortunately, the majority's affirmance of the Superior Court's calculations in both instances actually permits appellee to recover more than he actually lost in gross income. Accordingly, I must dissent to the affirmance of the Superior Court's opinion.

---

2. Liberty Mutual argues that its liability to appellee should be calculated by multiplying his normal monthly salary by 80% and then subtracting the social security benefits from the 80%. If this calculation were performed, Liberty Mutual would then be required to pay appellee only $1,328.90 per month ($2,733.50 (gross income) × 80% − $857.90 (social security benefits) = $1,328.90). Were this scenario accepted, Liberty Mutual would then be paying *less* than 80% of appellee's *actual loss* of gross income. This assertion is incorrect as it also serves to circumvent the liability imposed under § 1712(2)(i).