**Margaret CARROLL, John B. Carroll, h/w and Brian Carroll, Appellants,**

**v.**

**Herbert G. and Rosalie E. KEPHART, Appellees.**

Superior Court of Pennsylvania.

Argued June 23, 1998.

Filed Aug. 31, 1998.

S. Allen Needleman, Philadelphia, for appellants.

James P. Bradley, Media, for appellees.

Before POPOVICH, ORIE MELVIN and SCHILLER, JJ.

POPOVICH, Judge:

This is an appeal from the judgment entered in the Court of Common Pleas of Delaware County in favor of appellants, Margaret

Carroll, John B. Carroll and Brian Carroll, and against appellees, Herbert G. Kephart and Rosalie E. Kephart. On appeal, appellants present the following questions for our review:

1. Whether the trial court erred in precluding appellants from introducing evidence of Margaret Carroll's loss of income for the jury's consideration based upon the court's misinterpretation of Section 1722 of the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S.A. § 1701 *et seq.*?

2. Whether the jury verdict awarding Brian Carroll $6,500 for pain and suffering was grossly inadequate and against the weight of the evidence?

3. Whether the jury verdict was inconsistent where the jury awarded Brian Carroll the full amount of $13,725 for his medical expenses but awarded him only $6,500 for pain and suffering?

4. Whether the jury verdict awarding Brian Carroll only $6,500 for pain and suffering could be excused as a compromise verdict where negligence was admitted?

Upon review, we affirm in part, vacate in part, and remand for proceedings consistent with this opinion.

The relevant facts and procedural history are as follows: On October 30, 1993, at approximately 9:00 a.m., Margaret and Brian Carroll were involved in a two-vehicle accident with Rosalie Kephart. The collision occurred when Rosalie Kephart drove her vehicle into the rear end of the Carrolls' vehicle, which was driven by Margaret Carroll. As a result of the collision, Brian Carroll struck his head on the dashboard, requiring sutures over his left eye. Margaret Carroll hit her head on the headrest and sustained a whiplash injury. Margaret and Brian Carroll were transported from the scene to Riddle Memorial Hospital, where they were treated and later released. The extent of the injuries sustained by Brian Carroll as a result of the accident was in dispute.

On January 6, 1995, appellants filed a civil complaint against appellees to recover damages for their injuries arising from the automobile accident. At the commencement of trial, Rosalie Kephart admitted liability for the accident. The only issue for the jury to resolve at trial was damages. In response to special interrogatories, the jury determined that Rosalie Kephart's negligence was a substantial factor in bringing about appellants' injuries. The jury then returned a verdict awarding Brian Carroll $13,725 for medical expenses and $6,500 for pain and suffering. In addition, the jury awarded Margaret Carroll $7,500 and John Carroll $1,000 in noneconomic damages. Appellants filed a posttrial motion for a new trial, which was denied. Thereafter, judgment was entered in favor of appellants. This timely appeal followed.

Appellants first contend that the trial court erred in precluding them from introducing evidence of Margaret Carroll's loss of income for the jury's consideration based upon the court's misinterpretation of § 1722 of the MVFRL.

At the time of the accident, the Hartboro Horsham School District employed Margaret Carroll as a part-time school bus driver. Due to her injuries, Margaret Carroll missed ten weeks of work, which she received sick pay from her employer. Prior to the accident, Margaret Carroll had opted not to purchase no-fault income loss coverage with her automobile insurance company.

■ First, the trial court concluded that because Margaret Carroll was "eligible" to receive income loss benefits under § 1712(2) of the MVFRL, and because she chose not to purchase that insurance coverage, she was precluded from recovering wage loss from appellees.[1] Section 1722 states:

---

1. Section 1712(2) provides, in pertinent part:
   **§ 1712. Availability of benefits**
   An insurer issuing or delivering liability insurance policies covering any motor vehicle of the type required to be registered under this title ... shall make available for purchase first-party benefits with respect to injury arising out of the maintenance or use of a motor vehicle as follows:

   \* \* \*

   **(2) Income loss benefit.**—Includes the following:

## § 1722. Preclusion of recovering required benefits

In any action for damages against a tortfeasor, or in any uninsured or underinsured motorist proceeding, arising out of the maintenance or use of a motor vehicle, *a person who is eligible to receive benefits* under the coverages set forth in this subchapter, or workers' compensation, or any program, group contract or other arrangement for payment of benefits as defined in section 1719 (relating to coordination of benefits) *shall be precluded from recovering the amount of benefits paid or payable under this subchapter*, or workers' compensation, or any program, group contract or other arrangement for payment of benefits as defined in section 1719.

75 Pa.C.S.A. § 1722 (emphasis added). The court reasoned that the fact that Margaret Carroll could have purchased income loss coverage meant that she was "eligible" to receive these benefits.

We find the court's conclusion that Margaret Carroll was "eligible" to receive income loss benefits under § 1712(2), even though her automobile insurance policy did not provide for these benefits, is erroneous. At the outset, we note that the purchase of income loss insurance is optional. *See* 75 Pa.C.S.A. §§ 1711, 1712. Margaret Carroll did not violate any provision of the MVFRL when she opted not to purchase that coverage.

If we were to adopt the trial court's rationale that any person who could have purchased income loss coverage would be "eligible" to receive those benefits, it would produce an absurd or unreasonable result, which we must presume the legislature did not intend. *See* 1 Pa.C.S.A. § 1922(1); *Lindner v. Mollan*, 544 Pa. 487, 677 A.2d 1194 (1996). According to the trial court's interpretation, since every vehicle owner in Pennsylvania may purchase income loss coverage, every vehicle owner or insured driver in Pennsylvania would be "eligible" to receive income loss benefits. As a result, the only persons who could sue tortfeasors for loss of income would be out-of-state owners and operators of vehicles. We do

(i) Eighty percent of actual loss of gross income.

not believe the legislature intended such a result. Thus, we are unable to accept the trial court's argument that Margaret Carroll was "eligible" to receive income loss benefits under § 1712(2). Rather, we find that a person is "eligible" to receive income loss benefits under the MVFRL when he has actually purchased such benefits.

■ Second, the trial court determined that the sick pay received by Margaret Carroll was a benefit within the purview of § 1722 of the MVFRL. The court reasoned that if Margaret Carroll was not precluded from recovering her wage loss from the tortfeasor, she would be "double dipping" by receiving sick pay benefits from her employer and then recovering the same amount in damages from appellees.

In determining whether sick pay benefits are within the purview of § 1722, we must look to the language of § 1719. Section 1719 provides, in pertinent part:

## § 1719. Coordination of benefits

(a) **General rule.** - Except for workers' compensation, a policy of insurance issued or delivered pursuant to this subchapter shall be primary. Any program, group contract or other arrangement for payment of benefits such as described in section 1711 (relating to required benefits) 1712(1) and (2) (relating to availability of benefits) or 1715 (relating to availability of adequate limits) shall be construed to contain a provision that all benefits provided therein shall be in excess of and not in duplication of any valid and collectible first party benefits provided under section 1711, 1712 or 1715 or workers' compensation.

75 Pa.C.S.A. § 1719(a).

Appellants argue that the trial court misinterpreted § 1722. Appellants aver that sick pay does not fall within the purview of § 1722, but, rather, is a benefit in excess of, and not in duplication of, a third-party payment for loss of wages. Appellants rely on the decisions in *Panichelli v. Liberty Mutual Insurance Group*, 543 Pa. 114, 669 A.2d 930 (1996) and *Browne v. Nationwide Mutual*

75 Pa.C.S.A. § 1712(2).

*Insurance Co.*, 449 Pa.Super. 661, 674 A.2d 1127 (1996), *allocatur denied*, 545 Pa. 674, 682 A.2d 306 (1996), in support of their argument.

In *Panichelli, supra,* our Supreme Court held that the amounts received by an injured employee as sick pay and social security benefits were not deductible by an insurer in determining the income loss benefits due to the employee under the MVFRL. The Supreme Court explained:

> Panichelli's receipt of both employer provided sick leave benefits and social security disability benefits, as well as full income loss benefits, does not result in "double dipping". *These are benefits for which the employee has paid in the form of lower wages for the sick leave benefits and in the form of payroll deductions for social security benefits. Thus, in receiving his sick leave pay, Panichelli was exhausting his earned employee benefit.* Similarly, Panichelli has paid for social security disability benefits through payroll deductions, and he is now drawing on these benefits because his accident has rendered him unable to work. Liberty Mutual would have us lose sight of the fact that Panichelli has paid for his income loss benefits through premiums he paid Liberty Mutual with his own funds. He is entitled to income loss benefits under his policy in the full amount of his income loss without any offset for sick pay or social security benefits received by him.

*Panichelli*, 543 Pa. at 118, 669 A.2d at 932–933 (emphasis added).

In *Browne, supra,* this court relied on the decision in *Panichelli, supra,* and concluded that social security disability payments were not included in the category of benefits paid or payable under "any program, group contract or other arrangement" for which an offset must be made in ascertaining the benefits available under the MVFRL. *See* 75 Pa.C.S.A. §§ 1719, 1722. This court stated:

> Our conclusion is in keeping with the reasoning behind the decision in *Panichelli.* It was noted that Social Security disability benefits are benefits for which the employee has paid in the form of payroll deductions. The receipt of these benefits by the plaintiff in *Panichelli,* and their receipt in this case, do not constitute "double dipping." Appellant has paid for these benefits throughout his working career and has paid a separate premium to be compensated for all loss caused by a uninsured motorist. Recovery of both is not duplicative. Rather it is fair and contemplated by the terms of the MVFRL.

*Browne*, 674 A.2d at 1129.

We find the principles articulated in *Panichelli, supra,* and *Browne, supra,* applicable to the present case. We further conclude that the trial court misinterpreted the language of § 1722 of the MVFRL and failed to consider the reasoning behind the decisions in *Panichelli, supra,* and *Browne, supra.*

In *Panichelli, supra,* our Supreme Court emphasized the fact that sick pay and social security benefits were benefits for which an employee had paid for in the form of lower wages and payroll deductions. When receiving sick pay, an employee was exhausting his *earned* employee benefit, and the receipt of such did not result in "double dipping." Thus, sick pay benefits could not be used to reduce an employee's recovery because he paid for these benefits.

*Panichelli, supra,* and *Browne, supra,* set forth definitive examples of the type of benefits that are not included in the category of benefits paid or payable under § 1722 as to preclude recovery. According to these decisions, benefits for which a plaintiff has paid for or earned through his employment are not within the purview of § 1722 and the receipt of those benefits do not constitute a double recovery.

In the present case, since Margaret Carroll "paid" for the sick pay benefits she received from her employer in the form of lower wages, they are not benefits within the purview of § 1722. Thus, Margaret Carroll is not precluded from receiving sick pay, as well as recovering wage loss from appellees.

We do not find either of the trial court's arguments so compelling as to preclude Margaret Carroll from recovering wage loss from appellees. Consequently, we conclude that the trial court erred in precluding appellants from introducing evidence of Margaret Car-

roll's loss of income for the jury's consideration. Therefore, we are compelled to vacate the judgment, in part, and remand for a new trial limited to Margaret Carroll's damages for loss of income.

■ Appellants' second contention is that the jury verdict awarding Brian Carroll only $6,500 for pain and suffering was grossly inadequate and against the weight of the evidence. Thus, appellants claim that they are entitled to a new trial.[2]

■ The decision whether to grant a new trial is within the sound discretion of the trial court. *Mitchell v. Gravely Int'l*, 698 A.2d 618, 619 (Pa.Super.1997). We will not disturb the trial court's decision unless the court palpably abused its discretion or committed an error of law. *Id.*

> A jury verdict is set aside as inadequate when it appears to have been the product of passion, prejudice, partiality, or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff. Where the jury's verdict is so contrary to the evidence as to "shock one's sense of justice" a new trial should be awarded. It is the province of the jury to assess the worth of the testimony and to accept or reject the estimates given by the witnesses. If the verdict bears a reasonable resemblance to the proven damages, it is not the function of the court to substitute its judgment for the jury's. However, where the injustice of the verdict "stand[s] forth like a beacon", a court should not hesitate to find it inadequate and order a new trial.

*Kiser v. Schulte*, 538 Pa. 219, 225–26, 648 A.2d 1, 4 (1994) (citations omitted). "Generally, a verdict will not be disturbed merely on account of the smallness of the damages awarded or because the reviewing court would have awarded more." *Nudelman v.*

*Gilbride*, 436 Pa.Super. 44, 647 A.2d 233, 236 (1994), quoting 22 Am.Jur.2d, *Damages*, § 1029 (1922). "When the trial court *refuses* relief against an allegedly inadequate verdict, the appellate court *will exercise even greater caution in reviewing its action.*" *Nudelman*, 647 A.2d at 237, quoting *Mueller v. Brandon*, 282 Pa.Super. 37, 422 A.2d 664 (1980) (emphasis in original).

■ In the present case, the extent of Brian Carroll's injuries was in dispute, and the jury was presented with conflicting medical testimony. It was for the jury to assess the evidence and to accept or reject the conflicting testimony of the witnesses. *Carlson v. Bubash*, 432 Pa.Super. 514, 639 A.2d 458, 460 (1994), *allocatur denied*, 540 Pa. 592, 655 A.2d 982 (1995). Appellants offered the expert testimony of Dr. Hubert Lichtner and Dr. John Townsend in the form of videotaped depositions. Dr. Townsend, a board certified neurologist, opined that Brian Carroll sustained a mild traumatic brain injury causing dizziness, vertigo, loss of memory, lack of concentration, processing deficiencies, poor academic achievement, as well as post-concussive headaches. Dr. Townsend conceded that Brian Carroll did not complain of a head injury at the hospital following the accident. Dr. Lichtner, a chiropractor, opined that Brian Carroll also sustained a strain of the neck, right shoulder and lower back as a result of the automobile accident. Dr. Lichtner testified that Brian Carroll indicated that he had sustained whiplash injuries of the neck and back on five prior occasions while skiing, as well as strained his lower back in July of 1993, a few months before the accident.

Appellees offered the testimony of Dr. Richard M. Katz, a board certified neurologist, who examined Brian Carroll and reviewed the medical reports of the other treating physicians and the emergency room record of Riddle Memorial Hospital. Dr. Katz testified that Brian Carroll did not lose

---

**2.** Appellants also contend that the verdict was inconsistent because the jury awarded Brian Carroll the full amount for his medical expenses but awarded him less than the full amount for pain and suffering. We find that the verdict was not inconsistent. *See generally Chiaverini v. Sewickley Valley Hosp.*, 409 Pa.Super. 630, 598 A.2d 1021 (1991) (jury verdict was inconsistent where the jury found that defendant's negligence was not a substantial factor in bringing about plaintiff's harm but nevertheless awarded plaintiff damages as a result of the incident). Rather, appellants are making ostensibly the same argument as in issue two, that the verdict was inadequate and against the weight of the evidence. Thus, we will address both issues simultaneously.

consciousness following the accident, which indicated that he sustained a minor head injury. At the emergency room, Brian Carroll did not complain of any problems with his gait, balance, hearing or speech, or confusion. Dr. Katz opined that Brian Carroll sustained a mild facial laceration, soft tissue strain of the neck and back and a minor head injury. Further, Dr. Katz stated that Brian Carroll should have fully recovered from any injuries that he suffered as a result of the automobile accident.

In support of his opinions, Dr. Katz testified that the diagnostic studies performed on Brian Carroll, consisting of two MRI scans of the brain, a CAT scan of the brain and x-ray films of the skull, proved to be normal. Dr. Katz stated that he disagreed with Dr. Townsend's conclusion that Brian Carroll's ongoing complaints were related to a closed head injury. Dr. Katz also stated that there was insufficient data to determine if the automobile accident caused Brian Carroll's poor academic achievement at Montgomery County Community College, especially in light of the fact that he had poor grades prior to the accident. Dr. Katz opined that Brian Carroll's musculoskeletal type complaints warranted disability of a few weeks and that a few months of disability would be excessive. Furthermore, according to the records of Bucksmont Physical Therapy, Brian Carroll was described as independent in most activities by February 15, 1994.

After a thorough review of the record, we cannot conclude that the verdict was inadequate and against the weight of the evidence. It is apparent from the verdict that the jury found Dr. Katz's testimony credible and disbelieved the evidence of damages presented by appellants in excess of its award of $6,500 for pain and suffering. The jury did believe that Brian Carroll's medical expenses were incurred as a result of the accident, and awarded him damages in the full amount of $13,725. It is not for this court to dictate to the jury the evidence it must believe. *Catalano v. Bujak*, 537 Pa. 155, 161, 642 A.2d 448, 451 (1994). We do not find the jury verdict so shocking to one's sense of justice as to compel the award of a new trial. Therefore, we conclude that the trial court did not abuse its discretion or commit an error of law in refusing to grant a new trial on the grounds that the verdict was inadequate and against the weight of the evidence.

Finally, appellants contend that the jury verdict awarding Brian Carroll only $6,500 for pain and suffering indicates that the jury entered a compromise verdict, which is impermissible because Rosalie Kephart admitted liability. "A compromise verdict is one where the jury, in doubt as to the defendant's negligence or plaintiff's contributory negligence, returns a verdict for the plaintiff but in a lesser amount than it would have if these questions had been free from doubt." *Kiser*, 538 Pa. at 233, 648 A.2d at 8.

Herein, the jury was not in doubt as to appellees' negligence or as to appellants' contributory negligence. In response to special interrogatories, the jury found that Rosalie Kephart's negligence was a substantial factor in bringing about appellants' injuries. The jury was not asked to determine if appellants' were contributorily negligent. Since the verdict, as evidenced by the special interrogatories, was "free from doubt," we cannot conclude that the verdict was a compromise verdict, especially in light of our finding that the resulting verdict was adequate.

In sum, we find that the trial court erred in precluding appellants from presenting evidence of Margaret Carroll's loss of income. Furthermore, we conclude that the jury verdict was otherwise adequate and not against the weight of the evidence. For these reasons, we must affirm in part, vacate in part, and remand for a new trial limited to Margaret Carroll's damages for loss of income.

Judgment affirmed, in part; vacated, in part. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.