Alan TANNENBAUM, Appellee

v.

NATIONWIDE INSURANCE COMPANY, Appellant.

Superior Court of Pennsylvania.

Argued Jan. 10, 2007.

Filed March 5, 2007.

---

James C. Haggerty, Philadelphia and Allan D. Goulding, Jr., Morrisville, for appellant.

Leonard A. Sloane, Media and Richard A. Wolfe, Jenkintown, for appellee.

BEFORE: STEVENS, McCAFFERY and KELLY, JJ.

OPINION BY KELLY, J.:

¶1 This is an appeal from an order vacating the decision of an arbitration panel in a matter involving Appellee's underinsured motorist (UIM) claim against Appellant, his insurer. The question presented is whether benefits derived from self-paid disability coverage duplicate benefits payable under a UIM policy. We find that they do not and affirm.

¶2 On December 1, 2000, Appellee, a board certified pediatrician and Assistant Director of Practice at Einstein Medical Center, was rendered permanently disabled by catastrophic injuries suffered in an automobile accident. After resolution of his claim against the tortfeasor, Appellee sought recovery of UIM benefits[1] from Appellant, and the matter was submitted to arbitration under the terms of Appellee's insurance policy.

¶3 Prior to the arbitration hearing, Appellant submitted a motion *in limine* seeking to preclude Appellee from introducing evidence relating to amounts paid or payable from two personal disability policies subscribed to by Appellee, and one group policy supplied by his employer under an earned employee incentive program, all three of which were issued by the same company, UNUM. The motion was granted, and after hearing the arbitrators credited and/or set off $984,432.52 against their award of $1,875,000.00, leaving a net amount of $890,567.48. Appellee's petition to vacate the arbitrators' decision was granted after hearing, and this appeal followed.

---

1. These include economic damages for lost past and future earnings, lost earning capacity, and pain and suffering.

¶ 4 The motion *in limine* was based on the theory that because Appellee had already received disability benefits in the form of payments from UNUM, receipt of UIM payments without set-off would constitute duplicate recovery, or "double dipping," a practice the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa. C.S.A. § 1722, was specifically designed to prevent. That section provides:

§ 1722. **Preclusion of recovering required benefits**

In any action for damages against a tortfeasor, or in any uninsured or underinsured motorist proceeding, arising out of the maintenance or use of a motor vehicle, a person who is eligible to receive benefits under the coverages set forth in this subchapter, or workers' compensation, or any program, group contract or other arrangement for payment of benefits as defined in section 1719 (relating to coordination of benefits) shall be precluded from recovering the amount of benefits paid or payable under this subchapter, or workers' compensation, or any program, group contract or other arrangement for payment of benefits as defined in section 1719.

■■■ ¶ 5 In this appeal Appellant assigns error to the trial court's determinations: 1) that § 1722 does not prevent Appellee's receipt of benefits from both his UIM coverage and his disability policies; and 2) that Appellee should be able to plead and prove the amount of benefits paid or payable from his personal policies where a dispute still existed as to whether the group policy was paid for by Appellee or his employer.

2. **75 Pa.C.S.A. § 1719. Coordination of benefits**

(a) **General rule.**—Except for workers' compensation, a policy of insurance issued or delivered pursuant to this subchapter

In reviewing an arbitration award arising from an insurance contract which specifically calls for arbitration under the Pennsylvania Arbitration Act of 1927, now replaced by the Act of 1980, a trial court may modify or correct the award where the award is contrary to law and is such that had it been a jury verdict, the court would have entered a different judgment or a judgment notwithstanding the verdict. Furthermore, the trial court may not vacate an arbitration award except under the most limited circumstances. An appellate court may reverse the trial court only for an abuse of discretion or an error of law.

*Ricks v. Nationwide Insurance Company,* 879 A.2d 796, 798–99 (Pa.Super.2005), appeal denied, 587 Pa. 698, 897 A.2d 459 (2006) (citations omitted).

■■■ ¶ 6 Appellant bases its assignment of error with respect to § 1722 on three grounds: that the trial court 1) overlooked the very purpose and intent of the MVFRL, especially its cost containment objectives; 2) misapplied the decisions addressing coordination and payment of first party benefits; and 3) created an otherwise non-existent exception to § 1722. (Appellant's Brief at 9, 20). Despite the apparent multiplicity of Appellant's claims, all of these arguments are, in fact, iterations of the same notion, that § 1722 must be construed to regard any benefit payments other than those received pursuant to UIM coverage as, by definition, duplicative. In so arguing, Appellant confuses double recovery, which the Act does not permit, with recovery of excess benefits, for which the Act makes provision. *See* 75 Pa.C.S.A. § 1719(a).[2]

shall be primary. Any program, group contract or other arrangement for payment of benefits such as described in section 1711 (relating to required benefits) 1712(1) and (2) (relating to availability of benefits) or

¶ 7 The crux of Appellant's argument is that " § 1722 does not exempt plans because of the source of the payment and to adopt such an approach would defeat the very purpose of the MVFRL." (Appellant's Brief at 24). Specifically, Appellant insists that Appellee's having himself paid for his personal disability policies does not entitle him to benefits under both that coverage and his UIM policy, since such recovery would undermine the intent of the statute to prevent duplicate benefits. We are not persuaded, as a review of case authority in the area reveals a clear intent to acknowledge the legitimacy of excess benefits.[3]

¶ 8 We note preliminarily that the disability policies here on their face state, as § 1719(a) requires, that they are in excess of first party benefits available under the MVFRL. Excess clauses have long been understood to "provide protection to the insured in addition to other coverage which might be available to him." *Connecticut Indemnity Company v. Cordasco,* 369 Pa.Super. 439, 535 A.2d 631, 633 (1985) (citation omitted). Our Supreme Court in *Panichelli v. Liberty Mutual Insurance Group,* 543 Pa. 114, 669 A.2d 930, 932 (1996), addressed the question of whether sick pay and social security benefits were deductible in calculating actual loss of income under the MVFRL. The Court made clear that benefits for which an employee has paid, either "in the form of lower wages for the sick leave benefits and in the form of payroll deductions for the social security benefits," *id.,* are not duplicative, since "the reference in § 1719(a) to § 1712(2) [4] shows an intent on the part of the Legislature to allow **excess** recovery of wage benefits payable under any program, group contract, or other arrangement." *Id.* (emphasis added).

¶ 9 Similarly, in *Browne v. Nationwide Mutual Insurance Company,* 449 Pa.Super. 661, 674 A.2d 1127 (1996), *appeal denied,* 545 Pa. 674, 682 A.2d 306 (1996), our Court found that payment under the MVFRL was not subject to offset for social security disability benefits because the source of the latter is the claimant himself. *Id.* at 1129. We noted as critical appellant's having paid for the coverage out of his own pocket, and found that fact rendered the benefits recovered in excess of his UIM benefits, not in duplication.

¶ 10 In *Carroll v. Kephart,* 717 A.2d 554 (Pa.Super.1998), this Court again concluded, after reviewing *Panichelli* and *Browne,* that sick pay, because of which the appellant received lower wages, was not a reprise of wage loss benefits under the MVFRL: "benefits [] which a plaintiff has

1715 (relating to availability of adequate limits) shall be construed to contain a provision that all benefits provided therein shall be in excess of and not in duplication of any valid and collectible first party benefits provided in section 1711, 1712 or 1715 or workers' compensation.

3. Appellant's challenge to the order here rests almost entirely on *Austin v. Dionne,* 909 F.Supp. 271 (E.D.Pa.1995), which, as a Federal District Court decision, is both non-binding on this Court, and prior in time to the controlling authorities discussed herein.

4. **§ 1712. Availability of benefits**
      An insurer issuing or delivering liability insurance policies covering any motor vehicle of the type required to be registered under this title ... shall make available for purchase first party benefits with respect to injury arising out of the maintenance or use of a motor vehicle as follows:
      **(2) Income loss benefit.**—Includes the following:
      (i) Eighty percent of actual loss of gross income.
      (ii) Reasonable expenses actually incurred for hiring a substitute to perform self-employment services thereby mitigating loss of gross income or for hiring special help thereby enabling a person to work and mitigate loss of gross income.

paid for or earned through his employment are not within the purview of § 1722 and the receipt of those benefits do not constitute a double recovery." *Id.* at 558.

¶ 11 This view is further developed in *Ricks v. Nationwide Insurance Company*, 879 A.2d 796 (Pa.Super.2005), *appeal denied*, 587 Pa. 698, 897 A.2d 459 (2006). There the question involved whether the claimant's recovery of uninsured motorist (UM) benefits under his own policy was duplicative of benefits received under his employer's workers' compensation coverage. We found that it was not, as the statute prohibits subrogation by a workers' compensation carrier against a claimant's personal UM insurance policy. *Id.* at 801 n. 8.

¶ 12 In *Standish v. American Manufacturers Mutual Insurance Company*, 698 A.2d 599 (Pa.Super.1997), this Court considered the situation of a worker injured in the course of his employment while driving his personal vehicle. Because the automobile insurance premiums had been paid exclusively by the appellant, we found that his receipt of benefits pursuant to his own automobile policy was not duplicative of workers compensation benefits, and therefore not subject to subrogation. *Id.* at 601.

■ ¶ 13 All of these cases involve types of personally paid insurance different than that of Appellee herein, and Appellant insists that the holdings in each are limited to the specific type of excess insurance considered. We are not persuaded, as the overarching principle remains constant: where the personal policies resorted to are both separate from UIM, or UM, coverage, and paid for exclusively by the claimant either directly, or through payroll deductions which result in lower wages, payments received from these coverages do not duplicate benefits

under the MVFRL as they are fundamentally different from those benefits.

¶ 14 In *Carroll, supra*, we dismissed as erroneous the trial court's conclusion that because, theoretically, the appellant was eligible to receive wage loss benefits, she could not recover such benefits despite having chosen not to purchase the optional coverage to provide them. According to the court's reasoning, she was, in effect, rendered ineligible for one type of coverage by mere eligibility for, not receipt of, another. Appellant contends that the decision in *Carroll* is erroneous and in any event "not binding since it is distinguishable." (Appellant's Brief at 18 n. 6). We disagree. Despite some factual differences, the principle there, derived as it is directly from *Panichelli* and *Browne*, which Appellant attempts continually and unpersuasively to distinguish, governs the outcome herein. Should Appellant's argument prevail, insurance companies, not claimants, would receive a windfall, as premiums for excess coverage would have been paid to no avail; no benefit could accrue since any recovery other than UIM payments would perforce be designated "double." Such a result would offend not only the statute but public policy. As Amicus Curiae [5] points out, "Appellee is entitled to benefits for which he has paid." (Brief of Amicus Curiae at 3). Accordingly, we find that the trial court properly vacated the decision of the arbitration panel on the basis that "there was an error of law, and the arbitrators exceeded their powers under the agreement to arbitrate. 42 Pa.C.S.A. § 7314(a)(iii)." (Trial Ct. Op. at 3).

¶ 15 Appellant next contends that the trial court erred in finding that Appellee should be allowed to plead and prove the amounts paid or payable from his disability policies. The error lies, Appellant in-

---

**5.** The Pennsylvania Trial Lawyers Association.

sists, because the information on these matters was not submitted to the arbitration panel which therefore did not resolve the question of whether the disability policy Appellee received through his employment was paid for by him or his employer. Again, we are not convinced.

¶ 16 The absent information was not provided to the arbitrators because they had, in granting Appellant's motion in limine, refused to receive it. As already noted, in so doing they erred. Given this circumstance, the argument that the trial court erred in ordering that Appellee "is permitted" to produce this evidence is one most charitably described as circular. (Order dated 4/13/06).

¶ 17 In *Ricks, supra*, a panel of arbitrators was found by this Court to have prohibited the appellant improperly from "pleading proving and recovering" from his UM carrier the amount of worker's compensation he had received, an amount deducted from his UM coverage. We determined that because the two payment streams were not duplicative under § 1722, "the arbitrators 'had refused to hear evidence material to the controversy,' such that their award should be vacated. 42 Pa.C.S.A. § 7314(a)(iv)." *Id.* at 801. The same mistake is attributable to the arbitrators here.[6]

¶ 18 Order affirmed.

¶ 19 Appellee's Application to Quash and/or Dismiss Appeal is hereby DENIED. Application of Amicus Curiae for oral argument is hereby DENIED as moot.

6. Although the trial court did not vacate the arbitrators' award as to this issue on the basis of the same statutory section, we may affirm for reasons other than those advanced by the trial court. *See O'Connor–Kohler v. USAA*, 883 A.2d 673, 680 (Pa.Super.2005) *(en banc)*.