**Verdier v. Matson**

*Jason Inler,* for plaintiffs.
*Kevin Gillespie,* for defendant.

HERMAN, *J.,* October 6, 2008—

## INTRODUCTION

Before the court are the defendant's motion to mold and reduce the verdict and the plaintiffs' motion for delay damages. The motions arise from a jury verdict

entered on May 22, 2008 in favor of the plaintiff Ena S. Verdier in connection with damages she sustained when her car collided with the defendant's car on June 29, 2001. The court has considered the written and oral arguments of counsel, as well as the record and the available law. The motions are ready for decision.

## BACKGROUND

The plaintiffs alleged that the defendant's negligent driving caused the automobile accident. Mrs. Verdier sought compensation for pain and suffering and lost wages arising from her employment as an elementary school physical education teacher. Mr. Verdier made a claim for loss of consortium. The court ordered the trial to be bifurcated into separate liability and damages phases.[1]

The jury heard evidence about Mrs. Verdier's salary with the Greencastle-Antrim School District for the 2002-2003 school year. Counsel stipulated that Mrs. Verdier was granted sabbatical leave by her employer for that school year and received pay in the amount of $25,867.01 which represented one-half of her annual pay. Counsel indicated to the court there was a dispute about whether the court should reduce any wage loss amount awarded by the jury to Mrs. Verdier to reflect that she already received one-half of her 2002-2003

---

1. On February 11, 2008, the court granted the defendant's motion to bifurcate after considering the plaintiffs' objection and the pertinent law. A single jury was empanelled to decide both liability and damages.

school year pay during her sabbatical. In addition, counsel agreed the court would reduce the verdict to reflect Mrs. Verdier's previous receipt from her insurance carrier of $25,000 in first-party wage loss benefits.

The jury found the defendant 58 percent liable and Mrs. Verdier 42 percent liable for the accident. After hearing evidence on damages, the jury awarded Mrs. Verdier $65,000 in lost wages and $20,000 for pain and suffering for a total damages award of $85,000. The jury did not award Mr. Verdier any damages for loss of consortium. Counsel then filed and argued the instant motions.

Initially, we subtract from the verdict the $25,000 in first-party wage loss benefits. This reduction is necessary pursuant to the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §1719 and §1722, (MVFRL) which precludes double recovery of wage losses. This reduces the verdict to $60,000. We next reduce that figure by 42 percent which is Mrs. Verdier's proportionate share of responsibility for the accident. The resulting figure is $34,800. So far, the parties are in agreement as to the verdict molding process. The issue now before the court is whether sections 1719 and 1722 require the award to be further reduced by $25,867.01 which is the one-half salary Mrs. Verdier received during the 2002-2003 school year when she was absent from work on sabbatical. If the court agrees with the defendant that this further reduction is necessary in order to avoid the plaintiff receiving a duplication of benefits, the verdict would be lowered to $19,797.14.

## DISCUSSION

*Defendant's Motion To Mold/Reduce the Verdict*

Section 1722 of the MVFRL provides:

"In any action for damages against a tort-feasor arising out of the maintenance or use of a motor vehicle, a person who is eligible to receive benefits under any program, group contract or other arrangement for payment of benefits as defined in section 1719 (relating to coordination of benefits) shall be precluded from recovering the amount of benefits paid or payable under any program, group contract or other arrangement for payment of benefits as defined in section 1719."

The term program, group contract or other arrangement includes but is not limited to benefits payable by a hospital plan corporation or a professional health service corporation. Section 1719(b). The purpose of these provisions is to ensure that a person does not collect duplicate benefits for a single economic loss. Section 1719(a).

In response to the defendant's motion, the plaintiff cites cases which address these provisions in connection with various benefit types such as sick pay, social security disability payments and funds received under a self-paid disability insurance policy. The key factor in those cases was that the claimants, by being subject to lower wages through payroll deductions for sick pay and social security benefits or through the voluntary payment of insurance premiums, had already earned or paid for the monetary benefits they received out of their own pockets and therefore their awards did not need to be further

reduced in order to prevent them from receiving a double recovery. Indeed, section 1722 and the term double recovery do not even apply to such benefits. *Panichelli v. Liberty Mutual Insurance Group,* 543 Pa. 114, 669 A.2d 930 (1996); *Browne v. Nationwide Mutual Insurance Co.,* 449 Pa. Super. 661, 674 A.2d 1127 (1996); *Carroll v. Kephart,* 717 A.2d 554 (Pa. Super. 1998); *Tannenbaum v. Nationwide Insurance Co.,* 919 A.2d 267 (Pa. Super. 2007), *appeal granted,* 594 Pa. 4, 934 A.2d 687 (2007). According to Mrs. Verdier, there is no difference between the types of benefits at issue in those cases, especially sick pay, and the wages she received during her sabbatical. It is her position that she had already earned or paid for those wages through her employment and therefore they do not fall within the purview of section 1722.

By contrast, the defendant contends that the sabbatical wages which Mrs. Verdier received are fundamentally different from the types of benefits at play in the above cases. Specifically, the defendant contends that Mrs. Verdier's sabbatical wages were simply part and parcel of her salary pursuant to a collective bargaining agreement from the time she began her job with the school district. The defendant further contends that Mrs. Verdier failed to create a factual record showing she earned or paid for her sabbatical pay through lower wages via a payroll deduction or a similar out-of-pocket mechanism, either when she first started her job or at any time during the course of her employment. Essentially, the defendant's view is Mrs. Verdier has not demonstrated that she provided any consideration for her sabbatical pay and therefore the court's refusal to reduce the verdict

by $25,867.01 would allow her to receive an impermissible windfall under the MVFRL. Counsel have not cited, nor are we aware of, authority which specifically discusses sabbatical pay in relation to the concept of double recovery and sections 1719 and 1722 of the MVFRL.

Preliminarily it is important to note there is no dispute that the proportion of the sabbatical pay is set by statute: one-half Mrs. Verdier's annual salary pursuant to section 11-1169 of the Public School Code of 1949, 24 P.S. §1-101 et seq.: Salary on leave. The person on leave of absence shall receive at least one-half of his or her regular salary during the period he or she is on sabbatical leave. There is also no dispute that Mrs. Verdier's right to receive this benefit arose as a result of a collective bargaining agreement which was in place when she began her employment in 1970. Indeed, defense counsel specifically stipulated at trial (and continues to stress) that the sabbatical leave existed "pursuant to [Mrs. Verdier's] employment with the Greencastle-Antrim School District and by virtue of a collective bargaining agreement in effect at that time."[2]

Neither party cites to authority which specifically addresses the nature of sabbatical leave and pay, even though this type of benefit has both statutory and contractual origins, has long been part of compensation for those employed in the public school system and is a common source of litigation. 24 P.S. §11-1166 1171;

---

2. The trial record has not been transcribed. This quotation appears in the record on pages 2-3 of the defendant's brief and is consistent with the court's recollection of the stipulation.

*Bellefonte Area School District v. Deak,* 779 A.2d 1240 (Pa. Commw. 2001); *Nelson v. Western Beaver County School District,* 89 Pa. Commw. 126, 491 A.2d 964 (1985); *Walter v. North Hills School District,* 87 Pa. Commw. 302, 487 A.2d 85 (1985). A teacher becomes eligible for sabbatical benefits upon the satisfactory completion of the requisite number of years of service. Section 11-1166. Those years of service are part of the consideration underlying what has come to be treated as an accrued property right. *Bristol Township School District v. Karafin,* 84 Pa. Commw. 52, 478 A.2d 539 (1984); *School District of the City of Duquesne v. Duquesne Education Association,* 99 Pa. Commw. 63, 512 A.2d 103 (1986); *North Pocono School District v. Buscarini,* (C.P. Lackawanna, March 9, 1998).

A review of the collateral source rule provides valuable background on the issue of duplicate recovery. Under the rule, payments from a third party do not diminish the damages otherwise recoverable from the wrongdoer. *Johnson v. Beane,* 541 Pa. 449, 664 A.2d 96 (1995). The victim is entitled to the damages caused by the tortfeasor's negligence regardless of compensation the victim receives from other sources. *Nigra v. Walsh,* 797 A.2d 353 (Pa. Super. 2002). The principle underlying the rule is that it is better for the victim to receive a windfall than for the tort-feasor to be relieved of responsibility for the wrong. *Kagarise v. Shover,* 218 Pa. Super. 287, 275 A.2d 855 (1971).

This principle applies to many types of benefits, among them sick pay, medical expense reimbursements or similar monies paid voluntarily or under contract by the

victim's employer, including gratuitously continued salary. *McGinley v. U.S.,* 329 F. Supp. 62 (E.D. Pa. 1971). Benefits in the form of diminished wages which are received by a plaintiff from her employer during the period she is incapable of working because of the tortfeasor's actions are collateral benefits and may not serve to reduce the victim's monetary award. This principle applies to payments made pursuant to an employment contract where the injured party (before her injury) furnished consideration, making it an obligation of the employer to pay those benefits, assuming the injured party had faithfully performed her side of the contract. It also applies to cash gratuities and services rendered without charge, such as treatment in a veterans hospital. *Chenoweth v. Schaaf,* 576 F. Supp. 1556 (W.D. Pa. 1984); Restatement (Second) of Torts, §920(A), comment b; 1 Summ. Pa. Jur. 2d Torts, §9:20 (2008); *Pennsylvania Evidence,* Packel & Poulin, §423 (2d ed. 1999 and 2008 Supp); *McElwee v. Bundy,* Franklin C.L.J., vol. 22, no. 32 (2005).

It has been held that sabbatical pay is a collateral source in the sense that the teacher-victim would not have needed to use it unless she had been injured by the tort-feasor and the injured person may lose her opportunity to use the sabbatical for non-medical reasons, such as education, research or travel. *Beasley v. Yokem Toyota,* 767 So.2d 149 (La. App. 2d Cir. 2000). (citations omitted) The logic behind this form of leave and pay is that there is an advantage to the employer (and in the case of teachers, her students and the wider community) because the employee returns to work after using the sabbatical for study, travel or health in a better frame of

mind or more physically capable of performing her teaching duties. Such payments should not inure to the benefit of the tort-feasor and diminish his liability. *Bianchi v. Paliga,* 1984 WL 3798 (Ohio App. 7 Dist.) (not reported in N.E.2d). Indeed, use of sabbatical leave because of physical illness or disability was specifically anticipated and provided for by our own legislature in enacting section 11-1166. *Roy v. North Braddock School District,* 4 Pa. Commw. 237, 285 A.2d 550 (1971).

The defendant argues Mrs. Verdier has failed to show that she earned or paid for her sabbatical salary and/or furnished any consideration for those benefits insofar as she did not participate in the collective bargaining process and did not accept a lower salary in exchange for her sabbatical, nor was she subject to payroll deductions which accumulated to constitute the fund from which she was paid during her leave. We find this argument untenable for two reasons. First, regardless of whether Mrs. Verdier personally participated in the collective bargaining process when she initially began her employment back in 1970, it is clear she became eligible for her sabbatical only after she satisfactorily performed her job duties, completed the requisite years of service, and fulfilled her side of the contract with the school system. 24 P.S. §11-1166. In this sense, she did furnish sufficient consideration for her sabbatical pay and the fact that she made no out-of-pocket contributions such as payroll deductions or premiums is not relevant or key. What is relevant and key is that this collateral payment source one-half her annual salary should not be denied her because to do so would allow the defendant to escape re-

sponsibility for the damages she caused to Mrs. Verdier.

The second reason we are unpersuaded is because we disagree with the assumption underlying much of the defendant's argument, namely, that it was incumbent upon Mrs. Verdier to prove that the lump-sum award for lost wages should not be reduced by the amount of her sabbatical pay. On the contrary, we find it was the defendant's burden as the petitioner on this motion to come forward with the legal and factual grounds which demand that this court disturb a jury verdict, in other words, that the court is compelled to find as a matter of law that Mrs. Verdier is not entitled to collect what the jury determined is an appropriate award to make her whole. The defendant simply has not met this burden and therefore the court will deny the motion to mold/reduce the verdict by $25,867.01.

### Plaintiffs' Motion for Delay Damages

Pennsylvania Rule of Civil Procedure 238 allows a plaintiff who prevails on her claim for damages for bodily injury to file a motion requesting delay damages. At the request of the plaintiff in a civil action seeking monetary relief for bodily injury, damages for delay shall be added to the compensatory damages awarded against each defendant found to be liable to the plaintiff in the verdict of a jury and shall become part of the verdict. Pa.R.C.P. 238(a)(1). Damages for delay shall be awarded for the period of time from a date one year after the date original process was first served in the action up to the date of the verdict. Pa.R.C.P. 238(a)(2). Damages for

delay shall be calculated at the rate equal to the prime rate as listed in the first edition of the *Wall Street Journal* published for each calendar year for which damages are awarded, plus one percent, not compounded. Pa.R.C.P. 238(a)(3).

The defendant opposes the award of delay damages, but that opposition is simply a function of the defendant's view that the plaintiffs are not entitled to a net award of $34,800 based on the issues addressed in connection with the defendant's motion to mold/reduce the verdict. The defendant has not objected to the particular time and interest rate calculations as they appear in the record within the plaintiff's motion, even though we have found the calculations incorrect and have made the necessary computations, as set forth below.

The record shows the plaintiff served a writ of summons on the defendant on May 15, 2003. Delay damages began to accrue one year later on May 15, 2004. The jury rendered its verdict on May 22, 2008. The intervening period was 1,469 days (4 years, 8 days). Applying the pertinent time and rate calculations as set forth in the plaintiffs' motion, the total amount of delay damages is $10,491.01. Adding this figure to $34,800 yields a final verdict of $45,291.01.[3] An appropriate order is attached.

## ORDER

Now October 6, 2008, consistent with the attached opinion, the court hereby denies the defendant's motion

---

3. The plaintiffs incorrectly calculated the delay damages figure as $10,490.21 and the final verdict amount as $43,290.01.

to mold and reduce the verdict. The court grants the plaintiffs' motion for delay damages insofar as the final verdict/award is $45,290.01 and hereby enters judgment accordingly.

Pursuant to Pa.R.C.P. 236, the prothonotary shall give written notice of the entry of this order, including a copy of this order, to each party's attorney of record and to each party, and shall note in the docket the giving of such notice and the time and manner thereof.