616 A.2d 1027

**Linda GALLOP, Appellant,**

v.

**Anna Marie ROSE, Appellee.**

Superior Court of Pennsylvania.

Argued Aug. 12, 1992.

Filed Nov. 18, 1992.

John J. Branigan, Philadelphia, for appellant.

James P. Bradley, Media, for appellee.

Before CAVANAUGH, WIEAND and McEWEN, JJ.

McEWEN, Judge:

This appeal has been taken from the judgment in the amount of $15,000.00 entered in favor of appellant, Linda Gallop, after the court molded a jury verdict in the amount of $100,000.00 in favor of Linda Gallop, by reducing it by $85,-000.00, representing the amount of uninsured motorist benefits already paid to appellant. We affirm the verdict as molded by the trial court.

Appellant recites in her brief the factual history of the accident which underlies this litigation and appeal:

On November 18, 1984, plaintiff Linda Gallop was a passenger in a vehicle owned and operated by defendant Anna Rose. Defendant's vehicle left the highway in order to avoid an on-coming vehicle whose identity was never ascertained or verified. The vehicle occupied by the parties struck a large tree off to the side of the highway causing very serious injuries to both parties. The police arrived at the scene and conducted an investigation while arranging for medical rescue personnel to transport both parties to the local hospital for emergency care. Police noted the absence of any skid marks from the Rose vehicle in addition to the strong odor of alcohol from defendant Rose who had a blood alcohol content of .19%.

The account of the efforts of appellant to effect a recovery for her injuries is recited in the brief of appellee:

Aetna Insurance Company had issued policies of motor vehicle insurance to appellee, appellant and appellant's parents. Appellee, Anna Maria Rose, had $35,000 in uninsured motorist coverage while appellant Linda Gallop had $65,000 in uninsured motorist coverage. In negotiations with Aetna, all claims regarding coverage were pursued as uninsured motorist claims because of the phantom vehicle involved in this accident. Following negotiations it was agreed that appellant would receive $20,000 from appellee's uninsured motorist coverage and appellee would receive $15,000 in uninsured motorist benefits. Appellant also sought to recover under her own and her parents' policies which, with stacking of benefits, provided $65,000 in uninsured motorist

benefits. Following an arbitration hearing on the matter, appellant was awarded the full $65,000.00 available with the panel noting that the extent of her damages exceeded the available coverages of $85,000.00 in uninsured motorist benefits. Appellant, on November 7, 1986, commenced the instant [trespass action] against appellee. A default judgment was entered December 2, 1987, for failure to respond. The case proceeded to trial solely for an assessment of damages as a result of the default judgment. Prior to trial, appellee raised the issue of a "set off" or right to receive a credit for the $85,000.00 already paid to appellant in uninsured motorist benefits since appellant was now proceeding against Aetna's insured's liability coverage. The trial court denied appellee's motion *in limine* which requested the court reduce any verdict by the amount already paid presumably since the motion was premature in the absence of a determination of appellant's total damages.

The jury determined that the full measure of damages incurred by appellant was $100,000.00. Following trial, appellee, in post-verdict motions, renewed her request to "set-off" or receive a credit for the $85,000.00 already paid by Aetna to appellant. The trial court, in response to the post-verdict motions, exercised its equitable powers and reduced the jury verdict to reflect the difference between the jury's assessment of total damages at $100,000.00 and the $85,000.00 in uninsured benefits already paid to appellant by Aetna.

The distinguished Judge Joseph A. Smyth explained his decision to set the earlier uninsured motorist payments of $85,000.00 off against the verdict of $100,000.00 as follows:

The Court's charge instructed the jury unambiguously, on the question of damages, that they were to consider, "only such sum as will compensate Linda Gallop for the injury and damage she sustained, if any, as a direct result of the accident."

Moreover, the verdict sheet asked the jury to, "State the amount of damages, if any, sustained by the plaintiff as a result of the accident."

The jury was asked to estimate the full value of plaintiff's injuries. That is exactly what they did when they awarded her $100,000. Since plaintiff had already received $85,000, the proper and just action for this Court to undertake was to amend the verdict to $15,000.

Appellant has presented in her brief the following issues for our consideration:

Did appellee/defendant waive all defenses where they were never plead except through Motions In Limine before the trial to assess damages against the defaulting sole defendant/appellee.

Did the trial court err in molding a plaintiff's verdict against sole defaulting defendant by a set-off where no other tortfeasor has been judicially determined nor their negligence pro-rated.

We tarry not with the first claim of appellant that appellee waived all defenses relating to the *amount* of the damages actually suffered by appellee as a result of the default judgment entered against her, since we find the default judgment on the issue of liability irrelevant to our determination of whether the verdict was properly molded by the trial court. *Cf. Iorfida v. Mary Robert Realty Co. Inc.*, 372 Pa.Super. 170, 175–76, 539 A.2d 383, 386 (1988). Rather the focus of our study is the decision of the trial court to mold the verdict by reason of Aetna's asserted right to subrogation, a study which compels us to affirm the trial court. We do so because the unusual circumstances triggered in the instant case by the coincidence of the issuance by a single carrier of all of the policies of insurance involved in this controversy, have conferred upon Aetna equitable, statutory, and contractual rights to be subrogated to all payments *in excess of actual damages* received by appellant, *up to the amount* of the payments made by Aetna under the uninsured provisions of the motor vehicle policies at issue.

We first address the contractual right of appellee to subrogation. When appellant received a $20,000.00 payment under the uninsured motorist coverage provided by the policy issued by Aetna to appellee Anna Marie Rose, she executed, in

conjunction therewith, a release on August 15, 1985, which provided *inter alia:*

> \* \* \* \* \* \*
>
> The amount of such payment shall be applied in reduction of any amount which the undersigned may be entitled to recover, because of bodily injury . . . sustained in the above accident by the undersigned or any other person from an insured under the bodily injury liability coverage of the above policy.
>
> The Company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery against any person or organization legally responsible for the bodily injury because of which such payment is made.
>
> \* \* \* \* \* \*
>
> Claimant expressly reserves the right to "stack" other policies and this release does not relieve Aetna's obligation for those policies nor does it release the insured or Aetna from payment under the liability portion of this policy nor does any reduction apply.

This release evidences the intent of the parties to preserve Aetna's statutory and contractual subrogation rights to all recoveries in excess of appellant's actual damages.

Appellant subsequently demanded arbitration of her claim for uninsured benefits under the terms of the two policies covering the vehicles in appellant's household which, when stacked, provided $65,000.00 in uninsured motorist coverages. The panel of arbitrators awarded appellant $85,000.00, reflecting the available coverages of $65,000.00 from appellant's policies and the $20,000.00 already paid to appellant under appellee's policy. The arbitrators expressly found that $85,-000.00 did not reflect the full measure of the damages sustained by appellant. Appellant then instituted suit against appellee, seeking to recover under the liability coverages of the policy issued to appellee under which appellant had received the $20,00.00 in uninsured motorist benefits. A default judgment for failure to answer was entered against appellee on the issue of liability and the court submitted the issue of

the total amount of damages to the jury. The jury found that the total amount of damages sustained by appellant was $100,000.00. Thus, appellee had a contractual right to subrogation, up to the amount of its uninsured motorist payments, to any amount over $100,000.00 recovered by appellant as a result of the terms of both the insurance policies and the release executed by appellant.

The basis of the equitable right of appellee to subrogation was the subject of insightful analysis by our venerable colleague Judge John G. Brosky when he stated in *Allstate Ins. Co. v. Clarke*, 364 Pa.Super. 196, 527 A.2d 1021 (1987):

[W]hen an individual who has been indemnified for a loss subsequently recovers for the same loss from a third party, equity compels that the indemnifying party be restored that which he paid the injured party; thereby placing the cost of the injury upon the party causing the harm while preventing the injured party from profiting a "double recovery" at the indemnifying party's expense.

*       *       *       *       *       *

Application of the doctrine of subrogation is a relatively easy task when there exists only one element of damage to the insured party. If an individual suffers $5,000.00 damage to an automobile, for example, and is paid this amount pursuant to collision coverage of an insurance contract and then is later successful in recovering $5,000 in a suit for damage to the vehicle against a third party, the insurer is entitled to the $5,000 judgment. If the insured were to recover only $4,000 in a suit against the third party, the insurer would still be entitled to the $4,000. If for some reason, say a favorable valuation of the automobile, the insured were to recover $6,000 against the third party, the insurer would remain entitled to only $5,000, the excess would belong to the insured. However, subrogation becomes increasingly more difficult to apply as the amount of the claim increased and encompasses many elements of damages. If, to use the same example, in a collision an insured sustains not only property damages but personal injury, his claim against the tortfeasor will likely encompass

medical bills, loss of earning capacity, lost wages, pain and suffering, and various other elements of personal injury damages in addition to the property damages. If the case goes to verdict and full damages are awarded and later collected, the insurer's subrogation right would remain easily ascertainable because if the insured recovered in full the subrogee is also entitled to recover in full.

*Allstate Ins. Co. v. Clarke, supra,* at 202, 527 A.2d at 1024 (footnote omitted).

■ The equitable right to subrogation for payments made pursuant to uninsured motorist coverages attaches " 'to the insured's recovery from any person legally responsible for the insured's injury for which the insurer has made payment under uninsured motorist coverage *only* upon the insurer's showing that the sum of the insured's recovery from the insurer and from persons legally responsible for the injury *exceeds* the insured's loss.' " *Nationwide Mutual Insurance Co. v. Ditomo,* 330 Pa.Super. 117, 120–21, 478 A.2d 1381, 1383 (1984) *quoting Walls v. City of Pittsburgh,* 292 Pa.Super. 18, 22–23, 436 A.2d 698, 701 (1981) (emphasis supplied). Thus, Aetna had *no* equitable right to subrogation until appellant's total damages were ascertained and recouped, a condition precedent met when the jury returned a verdict of $100,000.00 and Aetna was required to pay to appellant an additional $15,000.00 to be made whole. Of course, had Aetna tendered the full amount of the verdict to appellee, Aetna would have had an equitable subrogation claim for $85,000.00 which could be recovered in a separate action against appellant.

■ Aetna would have also had a statutory right to subrogation pursuant to Section 2000(d) of the Uninsured Motorist Act, 40 P.S. §§ 2000 *et seq.*[1]

"Section (d) [of the Act] provides, in relevant part:
'In the event of payment to any person under [uninsured motorist coverage], the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any

1. Act of August 14, 1963, P.L. 909, No. 433, *as amended,* 40 P.S. § 2000 *et seq.*

settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made....'.

\* \* \* \* \* \*

The purpose of the above-quoted statutory section and contractual provision is to allow an insurer who makes a payment under uninsured motorist coverage the right of subrogation. *Hughes v. State Farm Mut. Auto. Ins. Co.,* 604 F.2d 573, 577 (8th Cir.1979), citing A. Widiss, *A Guide to Uninsured Motorist Coverage* § 3.10, app. B 3 at 313 (1968 and Supp.1978)."

*Walls v. City of Pittsburgh,* 292 Pa.Super. 18, 22–23, 436 A.2d 698, 700–701. Thus, pursuant to the provisions of the Uninsured Motorist Act, appellee would be entitled to recover all sums in excess of $100,000.00 paid to appellant.

We can perceive no abuse of discretion or error of law on the part of the trial court in molding the verdict to reflect the subrogation rights of appellee where to have refused to do so would have necessitated a separate subrogation action serving only to waste precious judicial resources. We, therefore, affirm the judgment entered upon the verdict as molded by the trial court.

Judgment affirmed.