**Amanda E. PUSL, Appellant**

v.

**Matthew J. MEANS and G & J Welding & Machine Company, Appellees.**

Superior Court of Pennsylvania.

Argued Nov. 19, 2008.
Filed Sept. 23, 2009.

**552**

Michael J. Koehler, Erie, for appellant.

Craig R.F. Murphey, Erie, for appellees.

BEFORE: BOWES, FREEDBERG, and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 Appellant Amanda E. Pusl appeals from the February 28, 2008 judgment in her favor in the amount of $25,000, entered in the Court of Common Pleas of Jefferson County.[1] Upon review, we affirm.

¶ 2 The factual and procedural history of this appeal is as follows. Appellant was injured in a two-vehicle accident on April 26, 2002. The other vehicle involved in the accident was owned by Appellee G & J Welding & Machine Company, and it was driven by Appellee Matthew T. Means. On January 26, 2004, Appellant filed a complaint against Appellees alleging that their negligence caused her injuries and, therefore, that Appellees were liable for damages. A two-day trial was held on October 29–30, 2007, in which a jury found that Appellees were negligent in causing Appellant's injuries. On October 30, 2007, a jury awarded Appellant $100,000 in damages as a result of Appellees' negligence. Before trial had commenced, Appellant had recovered $75,000 from her underinsured motorist benefits (UIM) carrier, State Farm. The $75,000 represented State Farm's policy limits. Evidence of this fact was not introduced at trial, and, therefore, the jury did not take this fact

---

1. In her notice of appeal, Appellant purports to appeal from the January 28, 2008 order granting Appellees' request to amend pleadings to include new matter and the February 28, 2008 order granting Appellees' motion to mold verdict and entering judgment in favor of Appellant in the amount of $25,000. However, the appeal properly lies from the February 28, 2008 entry of judgment on the docket. *See Billig v. Skvarla*, 853 A.2d 1042, 1048 (Pa.Super.2004) (Under our Appellate Rules, an appeal in a civil case in which post-trial motions are filed lies from the entry of judgment.). The appeal paragraph correctly reflects this distinction.

into consideration when fashioning its $100,000 damages award.

¶ 3 On November 6, 2007, Appellant filed a motion for Pa.R.C.P. 238 delay damages. On November 7, 2007, Appellees filed a motion to amend pleading to add a new matter and a motion to mold verdict. The trial court heard argument on the above motions, and it granted Appellees' motion to add a new matter. The trial court also granted Appellees' motion to mold the verdict and ordered judgment on the verdict in favor of Appellant in the amount of $25,000 due to the receipt of $75,000 that Appellant had acquired from State Farm prior to trial.

¶ 4 Appellant filed a timely notice of appeal to this Court on March 27, 2008. The trial court ordered Appellant to file a Pa.R.A.P.1925(b) statement of the errors complained of on appeal; she complied. In response, the trial court authored a Rule 1925(a) opinion addressing Appellant's proposed errors.

¶ 5 Appellant presents three issues for our review.

I. Whether the trial court erred in granting [Appellees'] motion to add new matter after trial when [they] waived all defenses under Pa.R.C.P. 1030(a)?

II. Whether the trial court erred in granting [Appellees'] motion to mold verdict pursuant to Pa.R.C.P. 227.1 when [they] failed to raise the

issue before the verdict was rendered?

III. Whether the trial court erred in ruling that [Appellees] can get credit against the verdict for [Appellant's] bargained for UIM settlement in violation of [the] collateral source rule and subrogation rights.

Appellant's brief, at 4.[2]

¶ 6 Appellant's first two arguments pertain to the trial court's decision to permit Appellees to amend their pleadings to include a new matter requesting the verdict to be molded to reflect Appellant's receipt of UIM benefits prior to trial. As these two arguments are interrelated, we address them contemporaneously.

¶ 7 Appellant argues that the trial court erred in granting Appellees' motion to amend to include a "set-off" defense after trial had concluded. Further, Appellant avers that because the "set-off" defense could have been raised before trial, it was error for the trial court to determine that Pa.R.C.P. 227.1 allowed submission of this defense post-trial, despite Appellees' failure to preserve it in a pre-trial motion.

■ ¶ 8 Appellant concedes that a party may, at any time, with consent of an opposing party or by leave of court, amend his or her pleading and that a trial court has broad discretion in ruling on a party's motion to amend the pleadings. *Somerset Community Hosp. v. Allan B. Mitchell & Assocs.*, 454 Pa.Super. 188, 685 A.2d 141, 147 (1996) (*citing* Pa.R.C.P. 1033).[3] How-

2. We note that the Pennsylvania Association of Justice has filed an *amicus curiae* brief on behalf of Appellant. Likewise, the Pennsylvania Defense Institute has filed an *amicus curiae* brief on behalf of Appellees. We have carefully considered the issues briefed by both parties in our analysis of the errors raised on appeal.

3. **Rule 1033. Amendment**

A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, correct the name of a party or amend his pleading. The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense. An amend-

ever, Appellant directs this Court to the caveat that an amendment will not be allowed when it is against a positive rule of law, where it states a new cause of action after the statute of limitations has run, or when it will surprise or prejudice the opposing party. *Id.,* 685 A.2d at 147 (citation omitted).

¶ 9 Appellant argues that the amendment is against a positive rule of law, Pa.R.C.P. 1030(a) and that she was prejudiced and surprised by the amendment. Appellant states that Appellees should have set forth their defenses in accordance with Rule 1030 and, that, as a result of their failure to comply with this rule, these defenses are waived pursuant to Pa.R.C.P. 1032(a). Accordingly, Appellant avers that allowing an amendment pursuant to Rule 1033 is against a positive rule of law, *i.e.,* Rule 1030.

¶ 10 Rule 1030 is stated, in pertinent part, as follows.

**Rule 1030. New Matter**

(a) Except as provided by subdivision (b), all affirmative defenses including but not limited to the defenses of accord and satisfaction, arbitration and award, consent, discharge in bankruptcy, duress, estoppel, failure of consideration, fair comment, fraud, illegality, immunity from suit, impossibility of performance, justification, laches, license, payment, privilege, release, res judicata, statute of frauds, statute of limitations, truth and waiver shall be pleaded in a responsive pleading under the heading "New Matter." A party may set forth as new matter any other material facts which are not merely denials of the averments of the preceding pleading.

(b) The affirmative defenses of assumption of the risk, comparative negligence and contributory negligence need not be pleaded.

Pa.R.C.P. 1030.

¶ 11 Rule 1032 is stated, in pertinent part, as follows.

**Rule 1032. Waiver of Defenses. Exceptions. Suggestion of Lack of Subject Matter Jurisdiction or Failure to Join Indispensable Party**

(a) A party waives all defenses and objections which are not presented either by preliminary objection, answer or reply, except a defense which is not required to be pleaded under Rule 1030(b), the defense of failure to state a claim upon which relief can be granted, the defense of failure to join an indispensable party, the objection of failure to state a legal defense to a claim, the defenses of failure to exercise or exhaust a statutory remedy and an adequate remedy at law and any other non-waivable defense or objection.

Pa.R.C.P. 1032.

¶ 12 Therefore, Appellant argues that failure to raise this "set-off" defense prior to trial resulted in waiver of the defense. Further, Appellant avers that because of the pre-trial availability of this claim, the trial court erred in its determination that Pa.R.C.P. 227.1 permits post-trial relief for Appellees.

¶ 13 Rule 227.1 dictates that "post-trial relief may not be granted unless the grounds therefor, (1) *if then available,* were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial[.]" *See* Pa.R.C.P. 227.1 (emphasis added). Despite Appellant's contention to the contrary, the grounds upon which Ap-

---

ment may be made to conform the pleading to the evidence offered or admitted.

Pa.R.C.P. 1033.

pellees requested relief, *i.e.*, modification of the verdict to preclude double recovery, were simply not available to be raised in a pre-trial proceeding. Appellees could not have been aware of the amount to be awarded by the jury pre-trial, and, therefore, they could not have foreseen that Appellant would be in a position to procure double recovery at that time. Therefore, we find Appellees were entitled to post-trial relief pursuant to Rule 227.1 because the defense of "set-off" was not available pre-trial. *See Gallop v. Rose*, 420 Pa.Super. 388, 616 A.2d 1027, 1028–1031 (1992) (trial court dismissed motion *in limine* requesting "set-off" as premature in absence of determination of appellant's total damages and this Court found no abuse of discretion in trial court's grant of post-verdict motion to mold verdict to reflect difference between jury verdict and amount already paid in UIM benefits); *see also Shankweiler v. Regan*, 60 Pa. D. & C.4th 20, 37 (2002). Because this defense was not available pre-trial, failure to include this defense in a new matter pre-trial pursuant to Rule 1030 does not result in waiver of the claim. Accordingly, we find Appellees properly preserved and raised this defense post-trial after the jury's determination of Appellant's total damages had been concluded.

¶ 14 Further, we find Appellant's protestation that she was prejudiced and surprised by the amendment to be without merit. Appellant was certainly aware that she had recovered $75,000 in UIM benefits pre-trial from State Farm. Additionally, Appellant has provided no explanation as to how she was prejudiced by the allowance of this amendment.[4] We find no error in the trial court's allowance of Appellees' amendment to their original pleading or in the trial court's determination that Appellees properly raised their "set-off" defense post-trial. *Somerset Community Hosp.*, 685 A.2d at 147. Therefore, Appellant's first two arguments fail.

¶ 15 Appellant's final argument is that the trial court erred in its determination that Appellees should receive credit for Appellant's bargained for UIM settlement in violation of the collateral source rule and subrogation rights.

¶ 16 Our standard of review is set forth as follows.

> [Although] a trial court has discretion in deciding whether to mold a verdict, it must nonetheless adhere to the principle that a verdict may only be molded where the intention of the jury is clear. Where the intention of the jury is far from obvious the verdict should be returned to the jury for further deliberations or a new trial should be granted.

*Herbert v. Parkview Hosp.*, 854 A.2d 1285, 1288 (Pa.Super.2004) (citation omitted).

¶ 17 In reviewing the trial court's molding of the verdict, we will keep in mind two public policies regarding awards for damages. First is the policy against a person recovering twice for the same injury. *Brandt v. Eagle*, 412 Pa.Super. 171, 602 A.2d 1364, 1367 (1992). Second is the policy that a tortfeasor should be liable for the damages he caused. *See Johnson v. Beane*, 541 Pa. 449, 456, 664 A.2d 96, 100 (1995) (better for wronged plaintiff to receive windfall than tortfeasor to be relieved of responsibility for wrong).

¶ 18 Regarding the first policy, our State Legislature enacted Section 1722 of the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S.A § 1701 *et seq.* Section 1722 was enacted to address cer-

---

**4.** Appellant's only argument regarding prejudice is that "[i]t also prejudices [Appellant] to raise pre-trial defenses post verdict." *See* Appellant's brief, at 8.

tain situations in which the recovery of benefits is precluded in order to prevent "double recovery" and to ensure that an injured person is entitled to one satisfaction for the harm incurred. Specifically, Section 1722 states, in pertinent part, as follows.

### § 1722. Preclusion of recovering required benefits

In any action for damages against a tortfeasor, or in any uninsured or underinsured motorist proceeding, arising out of the maintenance or use of a motor vehicle, a person who is eligible to receive benefits under the coverages set forth in this subchapter, or workers' compensation, or any program, group contract or other arrangement for payment of benefits as defined in section 1719 (relating to coordination of benefits) shall be precluded from recovering the amount of benefits paid or payable under this subchapter, or workers' compensation, or any program, group contract or other arrangement for payment of benefits as defined in section 1719.

75 Pa.C.S.A. § 1722.

¶ 19 Section 1722 was obviously designed to refer to only those benefits which are specifically recoverable as first-party benefits under the MVFRL. *Browne v. Nationwide Mut. Ins. Co.*, 449 Pa.Super. 661, 674 A.2d 1127, 1129 (1996).

¶ 20 Appellant's UIM benefits fall within Section 1722's first-party benefits because the UIM benefit was paid to her from her personal insurance policy with State Farm. *See Tannenbaum v. Nationwide Ins. Co.*, 919 A.2d 267, 270 (Pa.Super.2007) (discussing "benefits [ ]which a plaintiff has paid for or earned through his employment are not within the purview of [Section] 1722 and the receipt of those benefits do not constitute a double recovery") (*citing Carroll v. Kephart*, 717 A.2d 554, 558 (Pa.Super.1998)); *see also Pani-*

*chelli v. Liberty Mutual Insurance Group*, 543 Pa. 114, 118, 669 A.2d 930, 932 (1996) (benefits for which employee has paid, either in form of lower wages for sick leave benefits or form of payroll deductions for social security benefits, are not duplicative) (citations and quotation marks omitted). Therefore, Appellant's receipt of both the full jury award from Appellees and the pre-trial UIM settlement from State Farm would constitute the "double recovery" that the MVRFL was specifically designed to prevent. *See Tannenbaum*, 919 A.2d at 269 (*citing* 75 Pa.C.S.A. § 1722); *see also Brandt*, 602 A.2d at 1367 (stating rationale underlying this rule is clear, remedy provided to injured person is to receive only one full compensation for wrong done to him) (citation omitted). Accordingly, the trial court's molding of the verdict comported with Section 1722 and the general public policy in favor of limiting recovery to the total amount of the damages.

¶ 21 We contrast the trial court's molding of the verdict pursuant to Section 1722 with the public policy requiring the tortfeasor to pay for the damages in which he or she is liable. Appellant argues that the trial court's molding of the verdict reduced Appellees' liability from $100,000 to $25,000 because of the $75,000 that State Farm paid under the UIM policy.

¶ 22 Courts may exercise their equitable powers by reducing a verdict to reflect the difference between a jury's verdict and excess insurance benefits already paid to a plaintiff. *Gallop*, 616 A.2d at 1030–31; *Boyle v. Erie Insurance Company*, 441 Pa.Super. 103, 656 A.2d 941, 943–44 (1995); *Johnson*, at 456–57, 664 A.2d at 100; *Travelers/Aetna Property Casualty Corp. v. Snell*, 1997 WL 88909, 1997 U.S. Dist. LEXIS 1891 (E.D.Pa.1997).

¶ 23 Appellant argues that Appellees have no legal right to assert a "set-off"

defense for the UIM benefits because these benefits are collateral source benefits that do not affect the liability of the tortfeasor. Appellant contends that Appellees cannot claim State Farm's subrogation of the amount paid *via* the UIM benefit. She avers that the "set-off" results in the tortfeasor being relieved of his responsibility for the wrong in violation of the public policy underlying the collateral source rule.[5]

¶ 24 The collateral source rule is a rule of evidence that was intended to protect tort victims and that "prohibits a defendant in a personal injury action from introducing evidence of the plaintiff's receipt of benefits from a collateral source for the same injuries which are alleged to have been caused by the defendant." *Simmons v. Cobb*, 906 A.2d 582, 585 (Pa.Super.2006) (*citing Collins v. Cement Express, Inc.*, 301 Pa.Super. 319, 447 A.2d 987, 988 (1982)). This rule provides that payments from a collateral source shall not diminish the damages otherwise recoverable from the wrongdoer. *Johnson*, at 456, 664 A.2d at 100. The principle behind the collateral source rule is that it is better for the wronged plaintiff to receive a potential windfall than for a tortfeasor to be relieved of responsibility for the wrong. *Id.*, at 456, 664 A.2d at 100.

¶ 25 By molding the jury's verdict to reflect the $75,000 that State Farm paid under the UIM policy, it appears, at first glance, that the public policy underlying the collateral source rule was ignored in favor of Section 1722 by lessening the amount of damages that the jury attributed to Appellees. However, as discussed at length below, we find the trial court's

molding of the verdict did not diminish Appellees' liability amount due to the existence of the common law right to subrogation available to insurers who pay UIM benefits to their insureds. *See generally Johnson*, 541 Pa. 449, 664 A.2d 96 (1995).

¶ 26 The goal of subrogation is to place the burden of the debt upon the person who should bear it. *Johnson*, at 456, 664 A.2d at 100. The equitable doctrine of subrogation places the subrogee in the precise position of the one to whose rights he subrogated. *Id.*, at 456, 664 A.2d at 100 (*citing Allstate Insurance Company v. Clarke*, 364 Pa.Super. 196, 527 A.2d 1021, 1024 (1987)). Thus, the insurer who paid a UIM claim acquires, by operation of law, the right to seek subrogation from any person that the insured could have pursued who should rightly have borne the loss. *Id.*, at 457, 664 A.2d 96, 664 A.2d at 100; *Travelers/Aetna Property Casualty Corp.*, 1997 WL 88908, 1997 U.S. Dist. LEXIS 1891 (E.D.Pa.1997)). Appellant must be fully compensated, or "made whole," for injuries suffered before the right of subrogation on the part of the State Farm arises. *Nationwide Mutual Insurance Company v. DiTomo*, 478 A.2d 1381, 1383 (1984).

¶ 27 In molding its verdict, the trial court relied upon the reasoning enunciated in *Johnson* for the proposition that "when an injured party is fully compensated for a particular loss by her underinsurance carrier, her right to sue the tortfeasor is extinguished. By operation of law, the underinsurance carrier acquires the right to sue the tortfeasor to recover the amount it paid its insured." *Id.*, at 451,

---

**5.** Appellant is not alleging that the collateral source rule itself was violated as neither party attempted to admit evidence of Appellant's pre-trial receipt of UIM benefits at trial. Appellant argues that the trial court's molding of

the verdict undermines the basic tenets of the collateral source rule by placing the burden of the debt on the insurance company and not on the tortfeasor. *See* Appellant's brief, at 12.

664 A.2d at 98. It follows then, that if an injured party is partially compensated for her loss by her UIM carrier, her right to sue the tortfeasor for that particular amount should also be extinguished. The jury's initial verdict indicates its intent to provide Appellant compensation in the amount of $100,000, which exceeded the $75,000 UIM benefit that she received from State Farm. Accordingly, she was permitted to recover that additional amount, $25,000, from Appellees *via* the jury's verdict. At the point that State Farm paid Appellant UIM benefits, it acquired the right to sue Appellees through subrogation to recover the $75,000 it paid to Appellant.[6] *Cf. Johnson,* 541 Pa. 449, 664 A.2d 96.

¶ 28 Appellant attempts to distinguish *Johnson* from her situation by stating that unlike *Johnson* Appellees' tortfeasor liability is being reduced. However, we find the principles articulated in *Johnson* conclude otherwise. Appellant had already received her $75,000 payment from State Farm before the jury returned the verdict in her favor for $100,000. As in *Johnson,* Appellees are still liable for the additional $75,000, but instead of being directly liable to Appellant, Appellees would be liable to the subrogee State Farm for its payment of UIM benefits by way of a subrogation claim for the amount it paid to Appellant. The result of molding the verdict ensures that Appellant will receive the full amount of damages the jury determined would make her "whole," *i.e.,* $100,000. To allow Appellant to recover $75,000 in UIM bene-

fits from State Farm and $100,000 in damages from Appellees flies in the face of the established policy of this Commonwealth that an injured person is entitled to only one satisfaction for the harm incurred as discussed *infra. See Brandt,* 602 A.2d at 1367.

¶ 29 The issue of molding plaintiff's jury award to reflect the pre-trial receipt of UIM benefits was addressed by the Delaware County Court of Common Pleas in *Shankweiler.* The *Shankweiler* court molded the verdict and reasoned as follows.

> [T]he defendants, who were solidarily liable with the plaintiffs' underinsured motorist carrier to remit the damages to make the plaintiffs whole, neither evaded, nor circumvented, their obligations to the plaintiffs. Under the law governing excess automobile insurance coverage in this Commonwealth, plaintiffs had already received $ 50,000 in damages in the name of the defendant, and were entitled only to an award exceeding that figure after the jury had calculated the true measure of plaintiffs' damages. The plaintiffs' UIM carrier, EMCASCO, is left free to pursue its common-law subrogation rights to sums paid, if it chooses.

*Id.,* 60 Pa. D. & C. 4th at 47–48.[7]

¶ 30 Similarly, Appellees, who were solidarily liable with Appellant's UIM carrier, State Farm, to remit the damages to make Appellant whole, neither evaded, nor cir-

---

6. State Farm is not a party to this appeal, and our review of the record reveals no information regarding State Farm's intention to pursue a subrogation claim in this matter. Consequently, any claim State Farm may initiate in this regard is not presently before this Court, and we make no comment as to the merit of such claims. Our analysis of the public policy requiring a tortfeasor to pay for the damages for which he or she is liable is not affected by State Farm's failure to act on its subrogation rights.

7. Although not binding authority in this instance, we find *Shankweiler* to be analogous to the present circumstances. Accordingly, this Court is guided by its sound reasoning in our analysis of the issues in this case.

cumvented their obligations to Appellant. *See id.*, 60 Pa. D. & C. 4th at 47–48.

¶ 31 Accordingly, the trial court did not violate the public policy requiring tortfeasors to pay for the damages for which they are liable due to the right of subrogation.

¶ 32 In conclusion, we find no error by the trial court in its decision to mold the verdict to reflect the $75,000 amount previously paid to Appellant in the form of UIM benefits in light of the clear intention of the jury that Appellant would receive a total damage award of $100,000 for her injury. *Herbert,* 854 A.2d at 1288. Therefore, Appellant's final argument provides for no relief.

¶ 33 As all of Appellant's arguments fail, we affirm the judgment entered on February 28, 2008.

¶ 34 Judgment affirmed.

¶ 35 FREEDBERG, J. files a Concurring Statement.

Concurring Statement by FREEDBERG, J.:

¶ 1 I concur in the result reached by the majority. The decision to mold the verdict is mandated by 75 Pa.C.S.A. § 1722 in accord with the analysis of the majority.

¶ 2 I do not agree that *Johnson v. Beane,* 541 Pa. 449, 664 A.2d 96 (1995) supports the molding of the verdict. That decision was premised on the fact that the court was "not dealing with a situation where the liability of a tortfeasor is being reduced...." *Johnson,* 664 A.2d at 100. Thus, it is distinguishable from the case before us because the trial court in the instant matter by molding the verdict reduced the liability of the tortfeasor. As noted by the majority in footnote 6, there is nothing in the record to demonstrate

that State Farm intends to pursue a subrogation claim.