**Kathy SMITH, as Executrix for the Estate of Kenneth Smith, Deceased, and Kathy Smith, Individually, Appellant**

v.

**Linda ROHRBAUGH, Appellee.**

Superior Court of Pennsylvania.

Argued April 17, 2012.

Filed Sept. 28, 2012.

---

Scott B. Cooper, Harrisburg, for appellant, and PA Trial Lawyers amicus curiae.

Christian E. Eaby, Lancaster, for appellant.

Richard H. Wix, Harrisburg, for appellee.

BEFORE: STEVENS, P.J., BENDER, J., PANELLA, J., DONOHUE, J., ALLEN, J., MUNDY, J., OLSON, J., OTT, J., and WECHT, J.

OPINION BY OTT, J.:

Kathy Smith, as Executrix of the Estate of Kenneth Smith and in her own right, appeals from the judgment entered in the Court of Common Pleas of York County following a jury verdict in a case arising out of an automobile accident between Kenneth Smith and Linda Rohrbaugh. Smith claims the trial court erred in molding the jury verdict to zero based upon the prior receipt of underinsured motorist benefits, improperly granted a $15,000.00 offset for work loss benefits, and improperly denied the request for $11,533.40 in costs. After a thorough review of the submissions

by the parties, the official record, and relevant law, we affirm the trial court's decisions regarding the work loss benefits. We affirm in part and reverse in part on the issue of costs. Finally, we agree with Smith that the trial court erred in molding the jury award to zero based upon Smith's prior receipt of underinsured motorist benefits. Therefore, we reverse on that issue and reinstate the molded verdict of $35,036.00.

The basic facts and procedural history of this matter are simply related. On January 24, 2006, Kenneth Smith, now deceased, was involved in an automobile accident with Linda Rohrbaugh. Smith had stopped on West Market Street in York, Pennsylvania, when Rohrbaugh failed to stop her vehicle in time and struck the rear of Smith's car. Smith claimed the force of the impact pushed his car into the car in front of him.

Subsequently, Smith filed a claim for underinsured motorist (UIM) benefits against his own automobile insurance policy. That claim settled with a payment of $75,000.00. Smith's insurer, State Farm, also waived whatever subrogation rights it might have against any further payment from the alleged tortfeasor (Rohrbaugh).

Smith then instituted the instant lawsuit by writ of summons. A complaint was filed on February 19, 2008 claiming negligence, loss of consortium and punitive damages.[1] Smith alleged the accident caused him various damages including bodily injuries to his back, neck, shoulders, and a concussion. *See* Complaint, 2/19/08, at ¶ 13. He also claimed the injury to his neck required surgery. *Id.*

Trial of the case began on June 15, 2009 and the jury verdict was entered on June 17, 2009. Negligence had been admitted prior to trial, but the jury was required to determine whether the negligence was a factual cause of Smith's injuries. The jury did so determine and awarded damages in the amount of $50,036.00. This amount was specifically apportioned as $29,036.00 for medical expenses, $16,000.00 for lost wages, and $5,000.00 for pain and suffering. Kathy Smith received no award for loss of consortium. The verdict was molded to $35,036.00 because Smith had already received $15,000.00 in work loss benefits and the amount had been stipulated to by the parties.

On June 23, 2009, Rohrbaugh filed a post-trial motion asking to have the verdict molded to zero to reflect the $75,000.00 payment Smith had received prior to trial in UIM benefits. Rohrbaugh argued payment of the verdict would amount to an impermissible double recovery, as the jury verdict did not exceed the underinsured benefits Smith had already received.

On June 26, 2009, Smith filed a post-trial motion seeking reimbursement for costs of $11,533.40. Smith also claimed Rohrbaugh was only entitled to a $10,000.00 credit for work loss benefits, not the $15,000.00 awarded by the trial court.

The trial court denied Smith's motions and granted Rohrbaugh's motion to mold the verdict to zero. The trial court granted that motion on the basis of the then recently decided Superior Court decision in *Pusl v. Means*, 982 A.2d 550 (Pa.Super.2009).[2] The *Pusl* decision held that

---

1. The claim for punitive damages was not submitted to the jury.

2. In *Pusl*, in a similar factual scenario, the award of damages was molded to reflect the prior payment of UIM benefits to the plaintiff. The amount of UIM benefits paid, $75,000.00,

was determined to be a double recovery by the plaintiff and therefore precluded pursuant to Section 1722 (preclusion of recovering required benefits). In concluding UIM benefits were subject to Section 1722 preclusion, *Pusl* relied on *Tannenbaum v. Nationwide Ins. Co.*,

UIM benefits were precluded as double recovery in a tortfeasor action pursuant to 75 Pa.C.S. § 1722. A panel of our Court subsequently affirmed the trial court's decision in the instant matter; however, that decision was withdrawn when Smith's petition for *en banc* review was granted.

Because we are reversing the trial court's decision to mold the verdict to zero based on Smith's receipt of UIM benefits, we will address that issue first.

Smith raises four arguments why the trial court erred in molding the verdict to zero: (1) the instant case is distinguishable from *Pusl*, therefore *Pusl* is not binding; (2) the trial court improperly rewrote the terms of the UIM settlement between Smith and State Farm; (3) even if *Pusl* is otherwise controlling law, it should only be given prospective application; and (4) *Pusl* was wrongly decided. We agree that *Pusl* was wrongly decided and now overrule that decision.

■ *Pusl* correctly states that Section 1722 prevents double collection of first-party benefits. However, *Pusl* then equates the payment of underinsured motorist benefits with first-party benefits and, as a result, concludes Section 1722 applies to UIM payments. This is a misinterpretation. Section 1722 states:

§ 1722 Preclusion of recovering required benefits

In any action for damages against a tortfeasor, or in any uninsured or underinsured motorist proceeding, arising out of the maintenance or use of a motor vehicle, a person who is eligible to receive benefits under the coverages set forth in this subchapter, or workers' compensation, or any program, group contract or other arrangement for payment of benefits as defined in section 1719 (relating to coordination of benefits) shall be precluded from recovering the amount of benefits paid or payable under this subchapter, or workers' compensation or other arrangement for payment of benefits as defined in section 1719.

The "subchapter" referred to in Section 1722 is Subchapter B, regarding first-party benefits.[3] The "other programs" referred to as defined in Section 1719 are the statutorily defined benefits found in Sections 1711, 1712 and 1715, as well as workers' compensation benefits and hospital plans or professional health service plans. The benefits defined in Section 1712 are medical benefits up to $100,000.00 in coverage, income loss benefits, accidental death benefits, funeral benefits, combination benefits (a combination of available benefits), and extraordinary medical benefits exceed-

919 A.2d 267 (Pa.Super.2007). *Tannenbaum* determined that disability benefits, paid for by the claimant and that came from a source independent from the automobile policy, were not subject to Section 1722 preclusion. *Pusl* apparently interpreted this to mean that if the benefits were not from an independent source, then Section 1722 preclusion applied. Therefore, *Pusl* concluded that because UIM benefits did not fit the *Tannenbaum* scenario, they were precludable. "Appellant's UIM benefits fall within Section 1722's first-party benefits because the UIM benefit was paid to her from her personal insurance policy with State Farm." *See Tannenbaum v. Nationwide Ins. Co.*, 919 A.2d 267, 270 (Pa.Super.2007)

(discussing "benefits [ ] which a plaintiff has paid for or earned through his employment are not within the purview of [Section] 1722 and the receipt of those benefits do not constitute a double recovery.") *Pusl*, 982 A.2d at 556. The logical error in this statement is concluding that the *Tannenbaum* exception to Section 1722 was the only possible exception without examining the statutory definitions. *Tannenbaum* has since been overruled by our Supreme Court, *see Tannenbaum v. Nationwide*, 605 Pa. 590, 992 A.2d 859 (2010).

3. Subchapter B includes Sections 1711–1725.

ing $100,000.00.[4] Section 1711 requires every liability insurance policy issued to a motor vehicle registered under this title to provide $5,000.00 in medical benefits. Section 1715 sets the maximum coverage available for each of the defined first-party benefits.

Despite the assertion in *Pusl*, underinsured motorist benefits are absent from the list of precludable first-party benefits described "under this subchapter." While UIM benefits are not found in Subchapter B, we note that they are sometimes referred to as first-party benefits because they are typically provided by a claimant's own insurance policy. However, colloquial reference to UIM as a first-party benefit does not mandate we add UIM to those benefits the legislature has specifically designated by statute as first-party benefits.[5] To do so would usurp the legislature's power and improperly rewrite the statute.[6]

This interpretation is supported by the fact that UIM coverage is specifically designated as a separate available coverage by statute located in Subchapter C[7] of the Motor Vehicle Financial Responsibility Law ("MVFRL"). Subchapter C is entitled, "Uninsured And Underinsured Motorist Coverage." By placing first-party benefits and UIM coverage in different subchapters, the legislature was clearly designating the two as distinct entities. Therefore, references in Section 1722 to coverages available "under this subchapter," namely B, cannot rationally include coverage found in Subchapter C.

Finally, our Supreme Court has stated the Legislature's intent in enacting Section 1722 was to "shift a substantial share of the liability for injuries caused by uninsured and underinsured motorists from automobile insurance carriers to collateral source providers (many of which previously held subrogation interests), obviously with the aim to reduce motor vehicle insurance premiums." *Tannenbaum v. Nationwide Ins. Co.*, 605 Pa. 590, 992 A.2d 859, 866 (2010). Applying Section 1722 to the interplay between two aspects of automobile insurance, third-party coverage and underinsured coverage, cannot accomplish the Legislature's intent of shifting responsibility away from auto insurance. While imposing the offset would undoubtedly act to keep premiums in check, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing the spirit." 1 Pa.C.S. § 1921(b).

Therefore, regarding the application of Section 1722 to the present situation: (1) UM/UIM motorist coverage is not defined or regulated in Subchapter B, which specifically relates to first-party coverage. Rather, UM/UIM coverage is defined and regulated under Subchapter C; (2) Section 1722 does not specifically refer to UM/UIM benefits as precludable; (3) case law recognizes UM/UIM benefits are not stat-

---

4. *See* 75 Pa.C.S. § 1712(1)-(6) respectively.

5. Case law further supports this important differentiation between statutory definition and colloquial reference. Both *Zappile v. AMEX*, 928 A.2d 251 (Pa.Super.2007) and *Condio v. Erie Ins. Exchange*, 899 A.2d 1136 (Pa.Super.2006), recognize that UM/UIM (uninsured/underinsured) benefits are only colloquially referred to as first-party benefits. Also, *Zappile* and *Condio* both recognize another important difference: unlike statutorily

defined first-party benefits, UM/UIM benefits are inherently adversarial, an award of benefits being subject to arbitration or trial.

6. *See Burstein v. Prudential Prop. & Cas. Ins. Co.*, 570 Pa. 177, 809 A.2d 204, 206 n. 17 (2002) (courts not representative bodies and must not usurp the legislative function).

7. Subchapter C encompasses Sections 1731–1738.

utorily recognized first-party benefits; and (4) the application of Section 1722 to the interplay between third-party-tortfeasor coverage and UM/UIM coverage does not further the legislative intent of the section. Given these facts, it follows that Section 1722 was not designed or intended to require the offset of UIM benefits from an award against a tortfeasor. Therefore, the decision in *Pusl,* and subsequently the underlying decision on this matter have been based on improper grounds.

Smith also argues that the trial court improperly voided the agreement between them and State Farm to waive subrogation rights. In essence, molding the verdict to zero granted State Farm the subrogation it waived. Because our resolution of the issue is based upon statutory interpretation, this argument is not dispositive. However, we note our agreement with Smith.

■ While subrogation rights are addressed in terms of Subchapter B first-party benefits, subrogation can be a matter of contract in adversarial actions. While there is always a legal right to subrogation, that right, like any, can be waived or modified by agreement of the parties. If an insurer waives its right to collect against the tortfeasor, we see no reason why the courts should interfere with that arrangement.[8] In this instance, the waiver of subrogation rights may have disadvantaged State Farm, but State Farm is a sophisticated party and is free to enter into an agreement that might prove financially improvident.

■ In the final issue,[9] Smith claims the trial court erred in denying the application for payment of bill of costs. Smith sought payment of $10,260.41 in costs as the prevailing party. The vast majority of these costs, $8,866.42, were attributed to expert fees and technological personnel to operate digital machinery associated with the expert's testimony.

"It is a general rule in our judicial system, stemming from the Statute of Gloucester, 6 Edw. 1, c. 1 (1275) that costs inherent in a law suit are awarded to and should be recoverable by the prevailing party." *De Fulvio v. Holst,* 239 Pa.Super. 66, 362 A.2d 1098, 1099 (1976). Important to our analysis of all Appellant's issues is the distinction between record costs (such as filing fees) and actual costs (such as transcript costs and witness fees). Record costs are "the costs of proceeding in court, not those of preparation, consultation, and fees generally." *Id.*

*Zelenak v. Mikula,* 911 A.2d 542, 544 (Pa.Super.2006).

■ Additionally, "[a]t law the general rule is that costs follow as a matter of course, and the court has no discretion to award or deny them." *Id.* at 545.

■ Here, the trial court denied the payment of costs because Smith submitted

---

8. It was argued in plaintiff's answer to defendant's motion to mold the verdict, that subrogation is not actually at issue in this matter because the UIM carrier and third-party insurer are the same. In the instant factual scenario, as a practical matter to the insurer, the problem may simply be one of accounting, because the tortfeasor and injured party are insured by the same company, but actually subrogation would be against the third-party tortfeasor, not the insurer.

9. We need not reach Smith's argument that under the "common fund doctrine" she is entitled to a credit for the $5,000 in attorney's fees incurred in collecting the $15,000 work loss benefits since the official record indicates the parties stipulated to the full $15,000 deduction. *See* N.T. Trial, 6/16/09, at 93, *Wayda v. Wayda,* 395 Pa.Super. 94, 576 A.2d 1060 (1990) (courts may not ignore parties' stipulations).

a bill that contained both record costs and actual costs. The trial court ordered Smith to submit a bill with only record costs, but Smith did not do so. Therefore, the trial court denied all costs. Because the general rule is that the trial court has no discretion to deny proper costs, we are required to reverse the denial of payment.

There is no dispute that the $134.00 (cost for filing suit), $33.21 (sheriff service York County), $26.00 (sheriff service Adams County), $23.75 (cost of five subpoenas), $26.60 (postage serving subpoenas, certified mail, return receipt), $4.75 (subpoena executed by court), and $2.70 (postage serving subpoena, certified mail, return receipt) are all properly considered record costs. These items total $251.01.

Additionally, the trial court ordered the parties to supply it with certain items for a joint trial notebook pursuant to a preliminary trial order. *See* Order, 2/26/09. The parties had no discretion in this matter, therefore, the cost of supplying the materials needed for the trial court's benefit are properly included as "costs of proceeding in court", rather than as "preparation, consultation, and fees generally." *Zelenak, supra.* These costs were listed by Smith as $40.07 (extra copies of exhibits for joint trial notebook), $22.50 (copy charges for joint trial notebook), and $26.35 (UPS fee to send joint trial notebook to trial judge). These non-discretionary costs, incurred pursuant to court order and for the trial court's benefit, total $88.92.

The total amount of record costs incurred by Smith was $339.93. Therefore, we reverse the denial of all costs and direct Rohrbaugh to pay $339.93 in addition to the reinstated $35,036.00 molded verdict.[10] We direct the trial court to enter judgment in the manner described.

Judgment affirmed in part, reversed in part. Matter is remanded to the trial court for action consistent with this decision. Jurisdiction relinquished.

WECHT, J., files a Concurring Opinion.

CONCURRING OPINION BY WECHT, J.:

I join the Majority's disposition of all issues. I write separately to address two matters of concern.

Below, I comment first concerning what costs were taxable against Linda Rohrbaugh ("Appellee"). While I join the Majority in directing the entry of certain costs and fees, I believe that a portion of the award ultimately would stand on stronger footing if authorized expressly by our General Assembly or our Supreme Court.

Further, I elaborate briefly on my basis for joining the Majority's reversal of the trial court's erroneous application of 75 Pa.C.S. § 1722, which molded to zero the jury verdict entered in favor of Kathy Smith ("Appellant"). Although I believe the Majority's analysis to be sufficient in itself to support this aspect of its ruling, I believe an additional consideration worth mentioning further buttresses the Majority's disposition.

I take up these two issues in turn.

### Taxable Costs

I agree with the Majority's reading of our decision in *Zelenak v. Mikula,* 911 A.2d 542 (Pa.Super.2006), under which we emphasized that, historically and presently, "record costs," but not "actual costs," are recoverable by the prevailing party. Maj. Op. at 898. The heart of the contro-

---

10. In its December 9, 2009 Order and Opinion, the trial court awarded Smith delay damages on the full amount of the jury verdict, $50,036.00. This decision does not alter that determination; Smith is entitled to delay damages pursuant to Pa.R.C.P. 238(2).

versy herein is what costs asserted by Appellant, if any, constitute record costs. In *Zelenak*, we identified these as "the costs of proceeding in court, not those of preparation, consultation, and fees generally." 911 A.2d at 544 (quoting *De Fulvio v. Holst*, 239 Pa.Super. 66, 362 A.2d 1098, 1099 (1976)). These are distinct, we held, from "actual costs," examples of which include "transcript costs and witness fees." *Zelenak*, 911 A.2d at 544.

Appellant argues that the trial court erred in "seem[ing] to find that the only allowable litigation costs available to the prevailing party under 42 Pa.C.S. § 1726 are record or statutory costs set forth in 42 P.S. § 21071, which lists the fees that are charged by the prothonotary." Brief for Appellant at 12. Appellant also refers to 42 Pa.C.S. § 5903 and older case law, which entitle witnesses who appear pursuant to subpoena to certain *per diem* compensation. Brief for Appellant at 18–20. I read Appellant's argument to contain two principle assertions of error: 1) The trial court had the obligation to award taxable costs for all effectively mandatory expenses incurred by Appellant in satisfying the trial court's directions regarding the presentation of evidence, *qua* record costs; 2) the trial court erroneously declined to award as taxable costs certain lay and expert witness fees Appellant incurred in establishing her case or authenticating evidence.

Appellee argues that, even if the Appellant was the prevailing party as a matter of law,[11] she is not entitled to costs other than record costs under *In re Farnese*, 609 Pa. 543, 17 A.3d 357 (2011), and *Zelenak, supra*. Brief for Appellee at 6–8. Appellee contends that no valid appellate authority justifies the categorization of any of the non-docket costs Appellant seeks to tax as record rather than actual costs. *Id.* at 8. With regard to costs associated with expert witnesses, Appellee argues that Appellant's reliance on 42 Pa.C.S. § 5903 is misplaced, because that section merely specifies that subpoenaed expert witnesses are entitled to greater *per diem* compensation than subpoenaed lay witnesses. *Id.* at 7–8.

The trial court's discussion of the entire matter of taxable costs is brief:

> [Appellant claims reimbursement] for, *inter alia*, fees for expert witness reports and testimony, trial notebook preparation, and copies. We do not view 42 Pa.C.S. § 1726 as authorizing anything more than record or statutory costs associated with a suit. Indeed, that section provides for the Supreme Court to establish what items are "costs", which it has done. *See also* 42 Pa.S.A. § 21071 and 42 Pa.C.S. § 1725.1. We conclude that [*Zelenak*] is persuasive, if not binding on this Court, on the issues presented. The only allowable "costs" which are recoverable by a prevailing party are those authorized by court rule or statute.

---

11. The Majority does not address Appellee's argument that Appellant was not the prevailing party, and hence was entitled to no costs at all. Brief for Appellee at 5–6. This argument is unavailing under cases such as that cited by Appellee herself, which identifies a "prevailing party" as "a party in whose favor a judgment is rendered, regardless of the amount of damages awarded," extending even to when a party receives only "nominal relief." *Id.* (quoting *Zavatchen v. RHF Holdings, Inc.*, 907 A.2d 607 (Pa.Super.2006)). Appellee asserts that "zero dollars were awarded to the Appellant[ ]," but this is in patent disregard of the fact that the jury returned a non-nominal verdict in Appellant's favor, which was only later molded to $0 by the trial court. Plainly, this was effectively in excess of an award of the "nominal damages" that *Zavatchen* identifies as sufficient to constitute prevalence in litigation.

Accordingly, Defendant's motion to strike the Bill of Costs will be granted. [Appellant] will be granted ten days within which to file an amended bill of costs in conformance with law.

Trial Court Opinion ("T.C.O."), 12/9/2009, at 7 (citations modified).

The Majority reverses in part. First, and unproblematically in my view, the Majority reverses the trial court's ruling to the extent it denied Appellant's undisputed record costs, *i.e.,* filing fees and other docket costs, of $251.01. Maj. Op. at 898. Second, relying on *Zelenak*'s clear injunction against such expenses, the Majority correctly affirms the trial court's refusal to award costs associated with expert witnesses and individuals who assisted with various technology-related aspects of the trial, which amounted to $8,866.42. Maj. Op. at 898.

It is the third aspect of the Majority's holding on taxable costs that gives me pause. The Majority awards Appellant an additional $88.92 comprised of expenses associated with the preparation of a joint trial notebook, which the trial court required the parties to provide by pre-trial order. In so holding, the Majority implies that the same may hold true for costs associated with any documentary, evidentiary, or other labors that the law or an individual judge requires, rather than that which is produced as a strategic or tactical choice. While, ultimately, I join the Majority's rationale, I am troubled that the Majority can cite no binding, on-point authority to support this aspect of its analysis.

Inasmuch as the trial court and the parties resort to 42 Pa.C.S. § 1726 to support their respective arguments, I begin by reviewing in full our Supreme Court's recent discussion of the nature and effect of that provision:

Preliminarily, we must question the trial court's reliance upon Section 1726(a) of the Judicial Code as setting forth "some standards for the imposition of costs." Section 1726(a) does not purport to set forth governing substantive standards, but instead is directed at this Court (or an entity within the Unified Judicial System to which we delegate the authority), as the defined "governing authority," when prescribing "general rules" on the subject of assessing costs. *See, e.g.,* Pa.R.A.P. 2744 & note (rule promulgated pursuant to 42 Pa.C.S. § 1726 permits appellate court to award costs "as may be just" to appellee in frivolous appeal). Laying aside any separation of powers issue that Section 1726 may present, the list of considerations enumerated in Section 1726(a) does not create any substantive right in a prevailing party to recover costs in Pennsylvania.

\*　　\*　　\*

Generally, Pennsylvania adheres to the "American Rule," which states that litigants are responsible for their own litigation costs and may not recover them from an adverse party "unless there is express statutory authorization, a clear agreement of the parties, or some other established exception."

*Farnese,* 17 A.3d at 370 (some citations omitted, others modified). Put simply, except insofar as we are directed to an express statutory authorization, a clear agreement of the parties, or some other established exception to the "American Rule," Section 1726 is of limited utility to our analysis. Where it does inform the present issue, however, is by way of the *Farnese* Court's emphasis on the Court's own rule-making authority. *Id.* ("[T]he candidate here sought costs, not under Section 1726 or a rule/order of this court, but under a specific statutory provision....").

On the basis of this binding authority, as well as *Zelenak*, it is with hesitation that I join the Majority's determination as to what constitute record costs. As *Farnese* and numerous cases besides unequivocally establish, we honor the rule that parties bear their own litigation costs absent the application of an "established exception." While the taxation of record costs is one such exception, *see Zelenak*, 911 A.2d at 545 (quoting *Gold & Co., Inc. v. Northeast Theater Corp.*, 281 Pa.Super. 69, 421 A.2d 1151, 1154 (1980))("At law the general rule is that costs follow as a matter of course, and the court has no discretion to award or deny them."), nothing in the parties', the trial court's, or the Majority's analyses demonstrates a clear and unequivocal basis for us to deem any of the non-docket costs sought by Appellant herein to be taxable as an "established exception."

In *Zelenak*, this Court rejected an Erie County local rule that identified certain deposition transcript costs as taxable against the losing party. In that case, we relied heavily on this Court's prior decision in *Stewart v. Owens–Corning Fiberglas*, 806 A.2d 34 (Pa.Super.2002). At issue in *Stewart* was a rule promulgated by the Court of Common Pleas of Philadelphia County purporting to grant its courts discretion to award reasonable costs associated with an opposing party's unwillingness to settle. *See Zelenak*, 911 A.2d at 546 (citing *Stewart*, 806 A.2d at 39). The *Zelenak* Court reviewed Section 1726, which vests the authority to impose and tax court costs. *Id.* We noted one such rule permitting the taxation of costs incurred due to a party's discovery violations. *Id.* (citing Pa. R.C.P. 4019(d), (h)). We held the Erie County rule invalid because Section 1726, absent Supreme Court delegation of appropriate rule-making authority, did not vest the court of common pleas with the authority to deem such costs taxable.

Ultimately, I join the Majority in acknowledging Appellant's efforts to recoup costs she bore as a consequence of trial court requirements, and in allowing her to do so. Because the trial court expressly ordered these efforts (*i.e.*, the mandatory preparation of a joint trial notebook), the incurrence of these costs was not a function of Appellant's discretion. Consequently, they are in the nature of record costs, and thus taxable. Plainly, the recovery of such costs should be authorized by law as a matter of sound public policy. The Majority herein makes just such a policy argument in brief support of its holding. And that, indeed, is the source of my unease. Policy considerations are for the General Assembly and the Supreme Court; like the courts of common pleas, we lack the authority to identify new exceptions to the American rule. Hence, while I join the Majority in allowing recoupment of costs actually incurred at the express behest of the trial court, I emphasize my concern that we perch precariously here at the outer boundary of our authority as an intermediate appellate court.

Consequently, I join the Majority in reversing the trial court's ruling striking Appellant's bill of costs as to those items that clearly are record costs—in this case, solely docketing costs. The Majority identifies these "undisputed" costs as totaling $251.01.[12] Maj. Op. at 898.

---

**12.** Although I agree that these costs are not disputed in principle, Appellee contends in an aside that Appellant waived her claim to even these costs by failing to file the amended bill of costs ordered by the trial court in its order granting Appellee's motion to strike Appellant's bill of costs. Brief for Appellee at 8. Although it is imperative that parties make appropriate objections before the trial court to preserve them for appeal, Pa.R.A.P. 302(a), and although it is advisable always to follow the trial court's direction, I would not find

As stated, with a healthy measure of doubt,[13] I also join in reversing the trial court's order with respect to the other costs awarded by the Majority, totaling $88.92. These costs were those associated with the preparation of a joint trial notebook in conformity with the trial court's pretrial order. Like the Majority, I ultimately cannot ignore the fact that the parties lacked discretion to avoid these expenses. Candor compels me to acknowledge that these items are identifiable as taxable costs neither by Supreme Court rule nor by any statute enacted by the General Assembly. Because the Supreme Court has not delegated rule-making authority to us, it can be hoped prospectively that future litigants will seek definitive authorization from the highest legislative or judicial authorities.

### 75 Pa.C.S § 1722 (Preclusion of Recovery of Required Benefits)

I turn now to address an additional reason why I believe that the Majority correctly held that the trial court erred in molding the Appellant's verdict to $0 based upon its reading of 75 Pa.C.S. § 1722 of the Motor Vehicle Financial Responsibility Act ("MVFRL"), a provision designed to preclude double recovery by plaintiffs of certain categories of third-party benefits in automobile accident cases. I agree entirely with the Majority's analysis. I write separately here to identify an additional consideration that supports our disposition of this issue.

As noted by the Majority, the difficulty arises principally from a degree of confusion, at least in casual reference, regarding whether underinsured motorist ("UIM") claims are first-party or third-party benefits. Maj. Op. at 895–96. The Majority correctly notes that, although Pennsylvania courts, including this one, previously have suggested that UIM benefits are first-party benefits, *see, e.g., Pusl v. Means*, 982 A.2d 550 (Pa.Super.2009), they are not enumerated as such under the MVFRL, which we must interpret according to its plain meaning.

Section 1722 precludes double recovery only of the first-party benefits taken up in Subchapter B, which Section 1722 specifically incorporates in identifying benefits that may be used to mold downward a duplicative jury verdict. By contrast, UIM coverage is designated as a "separate available coverage" in subchapter C of the MVFRL. Maj. Op. at 896; *see* 75 Pa.C.S. §§ 1731–38 (subchapter C). "By placing first-party benefits and UIM coverage in different subchapters," the Majority explains, "the legislature was clearly designating the two as distinct entities. Therefore, references in Section 1722 to coverages available 'under this subchapter,' namely B, cannot rationally include coverage found in Subchapter C." Maj. Op. at 896.

waiver in this case. Appellant plainly included the items recited by the Majority as undisputed in her three-page bill of costs, from which patently taxable record costs easily could have been extracted. The trial court struck that bill in its entirety, but, in effect, without prejudice to seek those costs in an amended bill. This strikes me as unnecessary. The issue of those costs was set before the trial court, and, in my view, therefore preserved.

13. "The spirit of liberty is the spirit which is not too sure that it is right...." Learned Hand, 'The "Spirit of Liberty" Speech' (delivered in 1944 on I AM an American Day), Bruun and Crosby, eds., **Our Nation's Archives: The History of the United States in Documents** (Black Dog & Levanthal 1999).

I would add to the Majority's learned analysis that the trial court's interpretation of Section 1722 would lead to the absurd, and indeed incoherent, result that UIM benefits must be used to offset UIM claims. That is, if UIM claims were, *sub silentio*, to be read into Section 1722 as precludable benefits, then "in any ... [UIM] proceeding, arising out of the maintenance or use of a motor vehicle, a person who is eligible to receive benefits under [UIM coverage] ... shall be precluded from recovering the amount of benefits paid or payable under this subchapter." How a UIM recovery might be used to offset or preclude a UIM claim arising from the same occurrence is beyond me. We cannot interpret a statute in such a way that it eats its own tail.